[No. 750.]

ANDREW ALLISON, RESPONDENT, *v.* SARAH HAGAN, APPELLANT.

ERROR MUST BE AFFIRMATIVELY SHOWN.—If appellant presents no argument or authorities in support of an alleged error in the court below, this court will not consider the assignment, unless the error is so unmistakable that it reveals itself by a casual inspection of the record.

FRAUDULENT GRANTOR CANNOT OFFER EVIDENCE TO SHOW THAT CONVEYANCE WAS FRAUDULENT.—December 12, 1870, appellant conveyed certain real estate to K. January 3, 1871, K. conveyed the same property to Y. September 4, 1871, Y. conveyed it to appellant. April 15, 1871, respondent recovered judgment against K., had the property sold and became the purchaser at an execution sale, and thereafter commenced this suit to recover the property. Upon the trial appellant offered to prove that her deed of December 12, 1870, was made for the purpose of placing the property where her creditors could not reach it, so as to enable her to get money from New York to pay her liabilities; that K. agreed to reconvey the property upon demand; that the conveyances from K. to Y. and from Y. to her were made in furtherance of this agreement, she having in the meantime paid her liabilities. The court refused to allow this testimony: *Held*, that this action of the court was correct; that it was not an offer to prove a trust, but was an offer to prove that K. was a fraudulent grantee as against the creditors of appellant.

IDEM—RIGHTS OF CREDITORS.—Appellant's creditors could have defeated the conveyance upon the ground of want of consideration, or on the ground of fraud, but neither K. nor appellant could do so as against K.'s creditors. Subsequent to that conveyance the property was subject to the claims of K.'s creditors and K. could have sold it and given as good title to it as any other property owned by him.

IDEM.—As between the parties to a fraudulent conveyance or between a fraudulent grantee and his creditors, courts will not permit either the fraudulent grantor or grantee to be heard in avoidance of the fraudulent act.

IDEM—BONA FIDE PURCHASER.—It is a well-settled rule in equity that a purchaser with notice from a *bona fide* purchaser for a valuable considera-

tion, who bought without notice, may protect himself under the first purchaser. The only exception to this rule of law is where the estate becomes revested in the original party to the fraud, when the original equity will re-attach to it in his hands.

WHEN INSTRUCTIONS SHOULD BE REWRITTEN—MODIFICATION OF.—The court modified an instruction by erasing the words: "and the jury must find for the defendant" with one stroke of the pen, leaving them legible to the jury: *Held,* that it was the privilege of appellant to ask leave to rewrite the instruction, or obliterate the rejected words, and not having done so, she is not in a position to complain of the action of the court, the instruction being otherwise correct.

INSTRUCTIONS MUST BE CONSTRUED AS A WHOLE. — In determining whether any given instruction is erroneous, the whole must be taken together, and considered as an entirety.

IDEM—EFFECT OF CONVEYANCES MADE TO DEFRAUD CREDITORS.—The following instruction: "If you believe, from the evidence, that the deed from K. to Y. was made with the understanding that Y. was to hold the property until such a time as K. desired, and that then it should be conveyed by Y. as K. should direct, and that such conveyance was intended to hinder and delay the creditors of K., and that the defendant knew of such understanding, and she further knew the fact before the conveyances were made to her by Y. and K. on the fourth day of September, 1871, that K. was indebted to plaintiff at the time, your verdict must be in favor of the plaintiff:" *Held,* correct.

IDEM. — The court gave the following instruction: "If the jury believes, from the evidence, that the conveyance made by K. to Y., on the third of January, 1871, was made for the purpose of hindering, delaying or defrauding the creditors of K. in recovering the debt due by K. to plaintiff, and that the defendant was aware that said conveyance was made for such purpose before the conveyances were made by Y. and K., your verdict must be for plaintiff." *Held,* correct.

INSTRUCTIONS—DUTY OF COUNSEL.—If counsel for appellant thought the jury were not cognizant of the construction placed upon the statutes by the court in its instruction, the same being correct, it was their duty to prepare proper instructions upon the subject, and ask the court to give them.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts appear in the opinion.

*R. S. Mesick and W. S. Mesick,* for Appellant:

I. The court erred in refusing to allow the proof offered by plaintiff as to the consideration of the deeds.

If admitted it would have shown, or tended to show, that Kerrin never had any estate under the deed of December

12, 1870, which in equity ought to have been subjected to the claims of his creditors, but that on the contrary, he was morally and equitably bound to preserve the propperty for appellant, and to reconvey it to her under all contingencies, and that his deed to Young and Young's deed to her only resulted in an honest discharge of this obligation on his part, and an execution of the trust.

Even had the defendant obtained from Kerrin only a declaration of the trust, upon which, according to this proof, he received the estate from defendant, instead of the two deeds which resulted in the execution of the trust, no court of equity or law would hold that her rights must be sacrificed to the claims of Kerrin's creditors. (*Sime* v. *Howard*, 4 Nev. 473; *Davis* v. *Graves*, 29 Barb. 485; *Lonsbury* v. *Purdy*, 11 Barb. 491; *Keirsted* v. *Avery*, 4 Paige Ch. 14; *Buchan* v. *Sumner*, 2 Barb. Ch. 207.)

II. The court erred in giving the instructions specified in the assignments of error.

*Lewis & Deal*, for Respondent:

I. It is not admissible to show a want of consideration for a deed for the purpose of defeating it. The authorities hold that a person having made a deed for the purpose of defrauding or hindering his creditors, the deed cannot be set aside by the grantor. Such a deed is good and valid between the parties. (Bump on Fraudulent Conveyances, 442 *et seq.*, and cases there cited; 15 Ohio, 408; 18 Ohio, 418; 3 Sandford's Ch. 512; Willard's Equity, 240; 16 John. 189.) It cannot be said that the creditors stand in any worse position simply because Kerrin transferred the property to persons knowing of his fraudulent purpose, who paid no consideration therefor. In such a case the property is treated as if there had never been any transfer or conveyance of it; and the creditors are allowed to take it as if the title still remained in such voluntary or fraudulent grantor. (65 Barb. 227; Id. 286; 13 Wend. 570; 8 Cowen, 238; Bump, 507.)

II. The court did not err in refusing to give, or in giving, the instructions complained of by appellant. (Willard's

Eq. Jur. 256; *Jewett* v. *Palmer & May,* 7 Johns. Ch. 65; Bump on Fraudulent Conveyances, 282, 559; Kerr on Fraud and Mistake, 384.)

III. The defendant cannot impeach our title, because she is not a creditor, nor a *bona fide* purchaser from Kerrin (Bump on Fraud. Convey. 477; 2 Story Equity, 1502; 2 John. Ch. R. 65); nor does our statute change the rule as it existed under the statute of 13 Elizabeth. (1 Story Eq. Jurisp., sec. 359.) No informality or omission on the part of the sheriff in making the sale of the property under our judgment, which did not render our deed from him absolutely void, will avail the defendant in this proceeding. (38 Cal. 382; 21 Cal. 59; 17 N. Y. 276; Rorer on Judicial Sales, 234, sec. 656; 6 Monroe, 110; *Blood* v. *Light,* 38 Cal. 649; 6 Hand. 386; 55 Barb. 9; Waits' N. Y. Code, 412.)

IV. The defendant's title, as against the plaintiff, is absolutely null and void. (Bump on Fraudulent Conveyances, 453–477; Kerr on Fraud, 196, 197, and note, 199; 17 Conn. 493; 1 American Lead. Cases, 49; 1 Comp. L. 297.) If defendant had no title, the plaintiff is entitled to recover the possession. Fraud follows the property in the hands of all parties who are not *bona fide* purchasers. (65 Barb. 227; Id. 286; 2 Cowen & Hill, 854; 3 Duer, 341; 6 Duer, 232; 13 Wend. 570; 8 Cowen, 238–245; Bump, 507; 14 Peters, 84; *Remington* v. *Linthicum,* 24 How. 406; 2 Blackf. 230; Bump, 507.)

By the Court, LEONARD, J.:

This is an action of ejectment by respondent, plaintiff, against appellant, defendant, to recover possession of an undivided one-half of lot five, in block sixty-six, range C, in Virginia city, Storey county, Nevada, together with the appurtenances, etc.

The cause was tried by a jury, and the verdict was in favor of respondent.

Thereupon the court ordered and adjudged that the plaintiff was the owner of an undivided one-half of said premises, and that he was entitled to recover possession of the whole of said premises from defendant, and that plaintiff

be let into the possession thereof as a tenant in common with defendant.

Appellant moved for a new trial on several grounds. The motion was denied by the court and defendant duly excepted.

This appeal is taken from the judgment and from the order denying defendant's motion for a new trial.

The complaint is an ordinary pleading in ejectment, wherein plaintiff alleges that he is, and since April 15, 1871, has been the owner, and entitled to the possession of the premises in dispute; that while he was so the owner, etc., defendant, on December 28, 1874, ousted plaintiff, and now unlawfully withholds them from plaintiff. Defendant denies, generally, the allegations of plaintiff's complaint and avers that on the fourth day of September, 1871, she was the owner of, and in the possession of, and from thence hitherto, has been and now is, the owner of, in the possession of, and entitled to the possession of the whole thereof.

There are thirteen assignments of error stated in the transcript, but the first, second, third, fifth and ninth assignments have not been noticed by appellant's counsel. They will not be considered by this court, but will be regarded as waived. If appellant presents no argument or authorities in support of an alleged error in the court below, this court will not consider the assignment, unless the error is so unmistakable that it reveals itself by a casual inspection of the record. Perceiving no errors in the assignments above mentioned, they will not be noticed further.

The following facts, gathered from the agreed statement on motion for a new trial, are all that need be given at this time:

The premises described in the complaint, prior to June 1, 1869, were the property of Hugh Kerrin and W. E. Brown, who owned them in equal shares, and appellant occupied them as their tenant. On the day last named, Kerrin conveyed to appellant an undivided one-half interest in said premises, the consideration stated in the deed being five hundred dollars. There was testimony tending to show that this deed was given to secure a debt of five hundred

dollars due appellant from one Lizzie Greenwood.   October 12, 1869, Brown conveyed to appellant an undivided one-half interest in said premises, the consideration therefor being twelve hundred dollars.   December 12, 1870, appellant conveyed to said Kerrin, and January 3, 1871, Kerrin conveyed the same to one Jacob Young, Jr.   September 4, 1871, Young conveyed the same to appellant, and on the same day Kerrin also executed and delivered to defendant a deed of the same property.   All the conveyances above mentioned were duly recorded in the office of the recorder of Storey county, on or about the date of each, respectively.

April 15, 1871, respondent recovered judgment in the first judicial district in and for said Storey county, against said Hugh Kerrin, in the sum of nine hundred and seventeen dollars and eighty-five cents and costs, upon a debt which originally accrued in May, 1869, from Kerrin to respondent, and which was due prior to and at the time of the execution of the deed from Kerrin to Young, dated January 3, 1871.   Kerrin had no other property than that so conveyed to Young sufficient to satisfy said judgment.   Said judgment was duly docketed April 15, 1871, and execution was duly issued thereon to the sheriff of Storey county, May 6, 1874, against the property of Kerrin.   All the right, title and interest which Kerrin had in said property on the fifteenth of April, 1871, or that he afterward had therein, was sold at sheriff's sale, under said execution, to respondent, for fourteen hundred dollars.

December 16, 1874, respondent received the sheriff's deed of the property sold at sheriff's sale, to wit, an undivided one-half interest.

Respondent claims the premises in dispute, under the last-named deed, and urges that the conveyances from Kerrin to Young, dated January 3, 1871, and from Kerrin and Young to appellant, dated September 4, 1871, were fraudulent and void as to him.

Upon the trial, respondent introduced evidence to show that the deed from Kerrin to Young was made for the purpose of defrauding the creditors of Kerrin, and especially respondent out of their and his demands against Kerrin;

that Young knew such to be the object of said conveyance; that appellant knew said conveyance was made for such purpose, and that she advised the making of the same for that purpose; that no consideration was paid either by Young to Kerrin, or by appellant to Young or Kerrin; that a twenty-dollar piece was passed by Young to Kerrin at the time of the conveyance to Young, and that the money so passed was first given to Young by Kerrin for the purpose of having it passed as a consideration for making the deed last mentioned; that Young agreed at the time of the conveyance to him to reconvey the property in controversy to Kerrin whenever requested by the latter to do so, and that, until such property was so reconveyed, Young should pay to Kerrin all rents received therefor; that Kerrin directed Young to make the conveyance to appellant, dated September 4, 1871, and that the same was made in pursuance of such direction; that appellant was informed by Kerrin as to all the transactions and agreements above mentioned before the conveyance by Kerrin to Young, January 3, 1871, and that shortly after the date last aforesaid appellant stated to respondent's witness, who testified to the fact, that the conveyance, from Kerrin to Young, was made for the purpose of keeping respondent from collecting the demand for which he obtained judgment above mentioned, under which the sheriff sold the property in controversy.

Appellant introduced evidence tending to disprove some of the facts shown by respondent, and to establish the issues in the case for her. But, inasmuch as the statement does not specify the particulars wherein the evidence is insufficient to justify the verdict and judgment, and since the appellant relies on this appeal, only upon errors in law occurring at the trial, a further statement of the evidence and proceedings in the court below need not be made, except so far as may be necessary in order that appellant's specifications of alleged errors in law may receive proper examination.

The fourth assignment of error, and the first relied on by appellant, reads as follows: "The court erred in sustaining the objection of plaintiff to the further proposed testimony

of the defendant, as a witness on her behalf, upon the subject of the occasion and inducement of her making the conveyance of the property to Kerrin, on the twelfth day of December, 1870, and in refusing to allow the proof to be made by her, that that deed was made by her to Kerrin without any consideration whatever therefor, and in trust to be held by said Kerrin for her, while she went to New York to get money, with which to pay her debts, and upon an agreement between him and her, made at the time of said conveyance, that upon her doing so he would reconvey the property to her upon demand, and that the conveyance from Young to her was made in fulfillment of said agreement, and to reinvest her with the title to her property, she having procured said money and paid off her liabilities."

In this connection the transcript shows the following as the proceedings of the court: "Defendant testified that Kerrin paid nothing for the conveyance of twelfth December, 1870. That conveyance was made by me to him wholly without consideration. The occasion and inducement of my making that conveyance were these: My children were sick and I was greatly involved in debt in town, and I did it to get time to go East and get money from Mr. Thompson."

"Whereupon the plaintiff objected to any further statement by the witness of the said occasion and inducement, and counsel for defendant then and there, duly stated to the court that they proposed, by this witness,   *   *   * to prove that the making of the deed by her to Kerrin of the twelfth of December, 1870, was without consideration, and that it was made for the purpose of placing the property where the defendant's creditors could not attach it, or reach it by legal process for a time, while she might go to New York and get money sufficient to pay off and discharge her liabilities, and that it was agreed between her and Kerrin, when he took said conveyance, that upon her doing so, he would reconvey the property to her, upon demand, and that the conveyance from Young to her was made in fulfillment of said agreement between her and Kerrin to reinvest her with the title to the property, she having procured said money and paid off and discharged her

said liabilities. The court sustained plaintiff's objections and refused to allow witness to give the offered testimony, and defendant excepted."

Appellant claims that the proposed testimony would show, or tend to show, that Kerrin held the property solely in trust for her, and that the effect of the deed from Kerrin to Young, taken in connection with the deed from Young to her, was merely an execution of that trust by Kerrin, and no fraud upon respondent as a creditor of Kerrin.

Disregarding the question whether or not an executed parol trust could have been proven in this case, if that could have been done by the offered testimony without also proving the fraud of appellant, it was plain that this was not an offer to prove a trust, express or implied. From the offered testimony Kerrin was not a trustee in any proper sense, but he was a fraudulent grantee as against the creditors of appellant, and Kerrin took the whole title of appellant in favor of his creditors. (29 Barb. 485; 8 Cush. 527; 18 Ohio, 422; 16 Johns. 191.) Appellant's creditors could have defeated the conveyance upon the ground of want of consideration, or on the ground of fraud; but neither Kerrin nor appellant could do so, as against Kerrin's creditors. Subsequent to that conveyance the property was subject to the claims of Kerrin's creditors, and Kerrin could have sold it and given as good title to it as to any other property owned by him. Nor will the courts, as between the parties to a fraudulent conveyance, or between a fraudulent grantee and his creditors, permit either the fraudulent grantor or grantee to be heard in avoidance of the fraudulent act.

By this offered testimony, appellant, the fraudulent grantor, endeavored to show that the conveyance in question was executed and delivered for the purpose of delaying her creditors. "It is equally fraudulent under the statute to make an assignment of property for the purpose of delaying creditors in the collection of their debts, as it is to assign it for the purpose of defeating the final collection of such debts." (Willard's Eq. Jur. 247.)

In 15 Ohio, 428, the court say: "The proof' is   *   *   * That the deed was made to defraud the creditors of Edward

Barton, Sen., and the question now is, does the doctrine of estoppel apply so as that the law will give life and power to such a deed by perfecting the title of the grantee, or will it leave the parties where it found them? To this point a vast number of authorities have been referred to and read. Without controverting the authority of any one of the cases, we will give a direct answer to the question here propounded, and one that is consistent with every case of sound law to be found in the books of reports, as well those cited as others that might have been. Whenever a conveyance has been made to defraud creditors of either an equitable interest in lands, or of a legal estate in lands, the law will leave the parties just where they have placed themselves. It will not permit either to be heard, or to avoid the fraudulent act by showing his own fraud; nor will it permit the heir to avoid the act of his ancestor by proving the fraud of the ancestor under whom he claims. * * * The law leaves both where it found them, and operates upon their acts the same as if good faith and honesty had governed their conduct throughout the iniquitous transaction. By so doing we do not sanction the fraud. The fraud was directed against the creditors. They are not before us. * * He (the plaintiff's lessor) also assumes that all the equitable title remained in Edward Barton, Sen., after his fraudulent surrender, and the conveyance made by his direction; while we hold that he cannot show a particle of equity without showing fraud; and, as a matter of law, counsel admit that to permit him to do so would be grossly erroneous." To the same effect see Bump on Fraud. Conveyances, 444 *et seq.*; *Jackson* v. *Gornsey*, 16 Johns. 188; *Drinkwater* v. *Drinkwater*, 4 Mass. 356; *Goodwin* v. *Hubbard*, 15 Mass. 209; *Tremper et al.* v. *Barton et al.* 18 Ohio, 418; *Parkman* v. *Welch*, 19 Pick. 236; *Wise* v. *Tripp*, 13 Maine, 9.

Appellant contends that the offered testimony would have shown, or tended to show, that Kerrin never had any estate, under the deed of December 12, 1870, which in equity ought to have been subjected to the claims of his creditors, but that he was, on the contrary, bound to preserve the property for her, and to reconvey to her, and that his deed to

Young and Young's deed to appellant only resulted in an honest discharge of his obligation on Kerrin's part and an execution of the trust. From the proposed testimony, there can be no doubt that Kerrin and appellant conspired together to delay the creditors of appellant. The law declares such conduct "an offense against good morals, common honesty, and sound public policy."

"The principle that a collusive contract binds the parties to it is a principle which commends itself no less to the moralist than to the jurist, for no dictate of duty calls on a judge to extricate a rogue from his own toils. On the other principle a knave might gain, but could not lose by a dishonest expedient; and inducements would be furnished to unfair dealing if the courts were to repair the accidents of an unsuccessful trick. It is, therefore, in accordance with a wise and liberal policy, which requires the consequences of a fraudulent experiment to be made as disastrous as possible, that a fraudulent grantee is allowed to retain the property, not for any merit of his own, but for the demerit of his confederate. The law endeavors to environ a debtor with all possible perils, and make it appear that honesty is the best policy." (Bump. 442.)

The law does not teach that an agreement entered into for the purpose of delaying or defrauding creditors of the vendor can be upheld or encouraged by declaring it a trust, nor will courts sustain it as such. If, however, such an agreement has in it any of the elements of a trust, it is still unlawful and void as to the creditors of the grantor, but the conveyance is valid between the parties thereto. Courts will notice the character of the transaction regardless of the name by which it may be called. If it is in fact fraudulent as the statute and the decisions thereon have defined that word, then neither of the parties thereto, in a proper case, can be relieved by calling it a trust. Any debtor who conveys his property for the purpose of delaying or defrauding his creditors expects, when the danger shall have passed, that it will be reconveyed to him; and generally, if not always, there is, probably, an agreement to that effect. In such case the very object of the transfer is to save the prop-

erty for the benefit of the fraudulent grantor at the expense of his creditors. So, if the offered testimony was admissible in this case, it would be equally so in every case of fraudulent transfer.

Authorities are cited by counsel for appellant, sustaining the doctrine that a prior equitable lien is paramount to a subsequent legal lien; that such legal lien is taken subject to such equitable lien, and that a court of chancery will so control the legal lien as to restrict it to the actual interest of the judgment-debtor in the property, so as fully to protect the rights of those who have a prior equitable lien therein or in proceeds thereof. And from these authorities it is argued, that inasmuch as appellant was in possession of the property in dispute at the time of the sheriff's sale thereof, respondent took it with notice of appellant's equities and subject thereto. But appellant has no equities. She elected to convey the property for the purposes stated. Thereafter the whole legal title thereto was in Kerrin, and courts will not listen to her fraudulent plea made for the purpose of obtaining relief from her own fraudulent acts.

In the cases cited, the equitable title was based upon transactions fair and honest in fact as well as in law. It is in such cases that the authorities cited are applicable. The case of *Davis* v. *Graves* (29 Barb. 480), is cited by appellant in support of this assignment. The facts stated in that case are, that in 1849, Jacob Graves made a general assignment of all his property for the benefit of his creditors. About the same time, with intent to defraud his creditors, he conveyed a large amount of real estate to his brother, Daniel Graves. In 1851, he caused one Mark H. Sibley to convey a valuable piece of real estate to Daniel, the consideration having been paid by Jacob. No trust was declared in writing, but Jacob, in his answer, alleged that Daniel agreed by parol, at the time of taking the conveyance, to reconvey to him (Jacob) when requested to do so. It turned out that Jacob was not insolvent, and in 1853, the creditors provided for by the assignment having been paid, the assignees re-assigned the property remaining in their hands. On February 1, May 23, and June 9, 1856, Daniel

executed three promissory notes to one Joseph Cochrane for debts contracted in 1856, the title to said real estate still remaining in him, and he having informed such creditor that the same belonged to him. On June 18, 1856, Daniel conveyed all of said real estate to Jacob, without consideration, and was then insolvent. Cochrane obtained judgment on the notes, and, on proceedings supplementary to execution, the plaintiff was appointed receiver. The action was commenced by plaintiff, as such receiver, to set aside the conveyance to Jacob as fraudulent. The referee decided that the conveyance was not fraudulent as to the creditors of Daniel, and dismissed the complaint. From the judgment entered upon his report, the plaintiff appealed to the supreme court. That court decided, among other things, that the conveyance from Jacob to Daniel was fraudulent as to the creditors of the former; that the property, while in Daniel's hands, was subject to the claims of his creditors as much as any other property to which he had title; but inasmuch as plaintiff had no lien by judgment at the time of the conveyance from Daniel to Jacob, that his right of alienation was perfect in respect to the property, and that it was not a fraud upon his creditors to convey it to the real owner Jacob Graves; that Daniel was not a trustee, but a fraudulent grantee as against the creditors of Jacob, and took an absolute fee in favor of, or as against his own creditors; that, until the creditors of Daniel had acquired liens upon the land, they had no legal or equitable claims in respect to it, higher than, or superior to, those of Jacob Graves. In that case it is difficult to understand just what the court intended to decide, for there are very few facts stated. But if, among other things, it decided that Daniel had a perfect right of alienation before some creditor had obtained a lien upon the property, by judgment or otherwise, but had no such right afterwards, if the conveyance before the lien was acquired, was with an intent to delay or defraud the creditors of Daniel, or if the result was to defraud the creditors of Daniel, then we think the decision was wrong in that respect. We think Daniel had no more right to convey that property before a lien by

judgment was acquired by his creditors, than after, if such conveyance was made to delay or defraud his creditors, or if the result was the delaying or defrauding of his creditors. The law gives every creditor the right to have the property of his debtor then owned, as well as that subsequently acquired by him, not exempt from execution, subjected to the payment of his debt; and no debtor has a right to transfer it, unless his debts be thereby paid or equally secured. We think, also, that the right of Cochrane to attack the conveyance from Daniel to Jacob, did not depend upon a lien acquired prior to the conveyance from the former to the latter. We are of the opinion further that if Daniel conveyed to Jacob with intent to delay or defraud his creditors, Jacob being cognizant of that intent, or if such conveyance was without consideration, that then the property was subject to the demand of Cochrane. The case of *Jackson ex dem. Van Buren* v. *Myers* (18 Johns. 425), was an action of ejectment, wherein it appears one Morse recovered judgment against Adsit in an action of slander at the September circuit, 1816. The premises in dispute, which were in possession of Adsit when the said suit was commenced, were seized and sold to Minard by virtue of an execution issued on a judgment in favor of Morse, by deed dated April 24, 1817.

Plaintiff claimed the premises by deed from Minard. Defendant gave in evidence three several deeds, all dated August 26, 1816, for different parcels of the premises in question. The amount of the consideration expressed in the deeds was fifteen hundred dollars. These deeds were executed a few days before the circuit court at which *Morse* v. *Adsit* was tried. No money was paid when the deeds were delivered; but notes were given for the amount of the consideration, payable in three annual installments. It was generally known at the time that the cause of *Morse* v. *Adsit* was to be tried at the September circuit in 1816, and the witness had no doubt that the defendant knew that the trial was to come on when the deeds were executed. The defendant was present when the lessor of plaintiff purchased the farm in question, and forbade the sale, and offered to

show his title. The defendant was a man of considerable means. The jury, under the direction of the court, found for plaintiff. In rendering the opinion on appeal, the court say: "The question arising in this cause is, whether the deeds from Adsit to Myers were made with intent to delay, hinder or defraud creditors or others of their just and lawful actions, debts, damages or demands. The facts stated in the case leave no doubt on my mind that the purchase was made and carried into effect for the purpose of placing Adsit's property beyond the reach of any judgment or execution which Morse might obtain in the action of slander then pending.

"But it is contended that as Morse, the plaintiff in the execution, had no debt or demand against him at the time the conveyance was executed to the defendant, but merely an action *maleficio* pending, the deeds from Adsit to defendant cannot be construed fraudulent within the purview of the statute for the prevention of frauds." * * * On review of the cases and in consideration of the broad expression in the statute, that conveyances 'to defraud creditors and others of their just and lawful actions, damages and demands' are void, I think it is competent for the lessor of the plaintiff who purchased under the execution of *Morse* v. *Adsit*, to object that the deeds relied on by the defendant are fraudulent and void, on the ground that the action of *Morse* v. *Adsit*, although found in *maleficio*, is within the spirit, words and meaning of the statute, and, consequently, that the plaintiff is entitled to judgment."

This case is referred to with approval in *Wilcox* v. *Fitch*, 20 Johns. 471; 5 Cow. 7.

The case of *Chapin* v. *Pease* (10 Conn. 69), was also an action of ejectment, wherein both parties claimed the premises in dispute, under Barnabas Pease, the plaintiff by the levy of an execution, December 12, 1829; the defendant by a deed from Barnabas Pease to him, dated October 21, 1828. The plaintiff claimed that defendant's deed was executed without consideration, and was fraudulent and void as to the creditors of the grantor; that the plaintiff was one of those creditors, having a debt against him contracted

in 1826. No consideration passed from defendant, Moses Pease, to Barnabas Pease at the time of the execution of the deed. Defendant claimed to have proven that in 1817, for the purpose of raising money by the indorsements of Barnabas Pease, he agreed to take from defendant a clear deed of the premises, in order to secure him on account of such indorsements, and to give defendant back a writing of even date with said deed to reconvey the premises to him whenever he (Barnabas Pease) should be free from all liabilities he might thus incur; that in pursuance of such agreement the deed and defeasance were executed and recorded; that the transaction was *bona fide;* * * * that Barnabas Pease, being freed from all liability, was bound to reconvey, and in so doing had done no more than a court of chancery would have compelled him to do. Plaintiff insisted that the deed was not *bona fide,* but was made to defraud the creditors of defendant. Barnabas Pease at the date of the deed was much in debt, and failed in four days afterward. On these facts the court charged the jury that if they should find the deed of 1817 was not executed in good faith, but with intent to defraud the creditors of Moses Pease, then they would find the deed in question to be without consideration and void, and their verdict must be for plaintiff.

The jury found for plaintiff. On appeal the court say: "The first question arises upon the correctness of the charge. And here it should be remarked, that it stands admitted on the motion, that the conveyance from Barnabas Pease to Moses Pease, the defendant, was entirely voluntarily. * * * The conveyance from the defendant to Barnabas Pease in 1817, being intended to defraud the creditors of the former, was void as to them, but good as between the parties. * * * Neither at law nor in chancery could Barnabas Pease be compelled to reconvey. As between the parties, the conveyance stood on the same ground as if a full and adequate consideration had been paid. Whether the conveyance was thus fraudulent was distinctly put to the jury, and they have answered the question. As against everybody then, but the creditors of his

grantor, Barnabas Pease had a valid title." \* \* \* The court then decides that the conveyance from Barnabas Pease to Moses Pease, being voluntary, was fraudulent and void as to the creditors of the former. (*Wise* v. *Tripp*, 13 Maine, 12; *Jackson* v. *Mather*, 7 Cow. 305; *Parkman* v. *Welch*, 19 Pick. 236.)

The proposed testimony was properly excluded. The sixth assignment is based upon the refusal of the court below to give the following instruction to the jury:

"If the jury believe from the evidence that the property in controversy prior to and at the time of the conveyance to Kerrin by defendant was hers, and that that conveyance was made without any consideration therefor, and that the same was not intended as a gift, and that afterward Young, at the request of Kerrin, did reconvey the property to defendant, the title so conveyed to defendant cannot be impeached or affected by the claims of plaintiff either as creditor of Kerrin or as a purchaser under the execution sale made upon the judgment against Kerrin, and the jury should find for defendant."

If the principles hereinbefore announced are correct, this instruction is clearly erroneous. It disregards the doctrine, established by an unbroken line of English and American decisions, that, as between the parties, a conveyance made with intent to hinder, delay or defraud creditors, gives to the grantee a perfect title, and that property so acquired is as much subject to the claims of the creditors of the grantee as any other property belonging to him. It disregards the whole question of fraudulent intent and notice on the part of appellant Kerrin, and Young. There are other reasons why this instruction should not have been given, but sufficient have been stated to justify the court below in refusing it.

The seventh assignment is the refusal of the court to give the following instruction to the jury: "If the jury believe from the evidence that at the time of the purchase made, and of the execution of the conveyance from Kerrin to Young, the latter paid the former, as a consideration therefor, the sum of twenty dollars in money, and delivered his

notes, executed in negotiable form, to Kerrin for three thousand two hundred dollars, and that the purchase was made, and such conveyance so taken, and the consideration so paid, without any notice whatever on the part of Young, of any intent on the part of Kerrin, to hinder, delay, or defraud any creditor of his, and without any intent on the part of said Young to hinder, delay, or defraud any creditor of Kerrin, then the said Young was a *bona fide* purchaser of the property in question for a valuable consideration without notice, and the jury must find for the defendant."

The court refused to give the instruction as offered, and the defendant excepted. The court thereupon struck out the words, "and the jury must find for the defendant," by drawing a pen mark over them, and leaving the words still legible.

The instruction so changed was given to the jury. To the striking out of the words stated, and the giving of the instruction so changed, defendant excepted on the grounds that said words were necessary to the instruction as a guide for the jury, and that the instruction being given to the jury with the words so stricken out, but still legible, was calculated to mislead the jury, and left them at liberty, or induced them to find for plaintiff, though they should believe that Young was a *bona fide* purchaser for a valuable consideration without notice.

It is a well settled rule in equity, that a purchaser with notice himself, from a *bona fide* purchaser for a valuable consideration, who bought without notice, may protect himself under the first purchaser. (2 Fonb. 149; 1 Story's Eq. Jur. 409; Gill. & Johns. 301.) The only exception to this rule is, where the estate becomes revested in the original party to the fraud, when the original equity will reattach to it in his hands. (1 Story's Eq. Jur., sec. 410.)

It is apparent from the evidence that appellant and Kerrin were the real actors in relation to the conveyance from appellant to Kerrin, from Kerrin to Young, and from Young to appellant. If Young purchased the property from Kerrin intending to pay for it, the record discloses the fact that he did not pay any portion of the purchase-money; that he

paid twenty dollars, but that the money was first given to him for the purpose of being so "paid;" that the notes were never paid by him or any other person, but were given back to him. And yet the evidence is unmistakable that, technically, he did "pay" the twenty dollars and did "execute and deliver" said notes to Kerrin. Under the evidence, then, if this instruction had been given the jury would have been misled. As the instruction was offered, the jury must have concluded that Young did "pay" the twenty dollars, and did "execute and deliver" to Kerrin the two promissory notes, and they must have found for defendant. And yet, if Young did not, in fact, pay the twenty dollars, as he did not, if Kerrin first gave the money to him to be paid back, and if the notes were not paid to Kerrin, but returned to Young, then, as a result, the conveyance was voluntary. In that state of the case, if Kerrin was a fraudulent grantor the deed was valid, as to respondent, even if Young was an innocent donee or grantee. (*Swartz* v. *Hazlett*, 8 Cal. 126; 18 Wend. 397; *Lee* v. *Figg*, 37 Cal. 328.)

*Hicks* v. *Stone et al.* (13 Minn. 434), was an action to recover the value of a stock of goods, alleged to be the property of the plaintiff, and wrongfully taken by defendants, who justified by alleging that at the time, the goods were the property of La Dow & Isaacs, a firm composed of William La Dow and Samuel T. Isaacs, and that they were taken by the defendant Stone, then sheriff of the county, under certain attachments issued against the property of said firm, commenced against them by the other defendants. Plaintiff claimed under an alleged sale by La Dow & Isaacs to one James La Dow, and a sale by James La Dow to him. Defendants alleged these sales fraudulent and void as against the creditors of La Dow & Isaacs. Upon this question of fraud issue was joined. In rendering the decision on appeal by plaintiff, the court say: "It is said by the judge below that, admitting the original transfer of the goods to La Dow was fraudulent, there was no testimony that the plaintiff was a party to the fraud. We think there was testimony tending to show that plaintiff not only knew of the fraud, but participated in carrying it into effect.

But, even if this were not so, as it appears that the plaintiff has never paid anything upon his alleged purchase from James La Dow, he is not entitled to protection as an innocent *bona fide* purchaser for value." (See also *Bolton* v. *Jacks,* 6 Rob. 234.)

Mr. Bump, under the head of "Voluntary Conveyances," says: "It follows from the definition of a voluntary conveyance that the question in regard to its validity or invalidity depends upon the intent of the party making it, and not on the motive with which it is received." * * * It is the innocent purchaser, and not the innocent donee, that is protected. The only question, therefore, is *quo animo* the gift or grant is made. It is the motive of the giver, and not the knowledge of the acceptor, that is to determine the validity of the transfer. (Bump, 279; see also 4 Sneed, 283; 18 Ill. 346; 32 Ill. 165; Willard's Eq. Jur. 256; 3 Clarke (Iowa), 557.)

In *Kaine* v. *Weigley* (22 Penn. 179), the court decide that "where the consideration money specified in a conveyance of real estate, made by an insolvent, was not paid at the time of the conveyance, it was the duty of the grantee, in an ejectment suit by one claiming as purchaser at a sheriff's sale subsequent to such conveyance, to show that such consideration money was afterward paid; that it was a full price for the property, and that the land was not purchased with an intent to hinder or defraud creditors." If the grantee has paid a valuable consideration, and has acted *bona fide,* without notice of the fraudulent intent of his grantor, he is protected, although his grantor conveyed with an intent to hinder, delay or defraud his creditors. In such case the innocent grantee not only acquires the legal title, but an equity that is paramount to the equity of creditors. But if he has, in fact, parted with no valuable thing, although entirely innocent, then if his grantor acts fraudulently, he is not protected. (*Spicer* v. *Waters,* 65 Barb. 227.) If Young had paid and Kerrin received the twenty dollars, and if Kerrin had received three thousand two hundred dollars named in the notes, then the instruction would have been correct. But in consideration of the evidence in the case,

the instruction offered was incorrect, and should have been refused or modified so as not to mislead the jury. But the giving of the portion not stricken out without modification, was more favorable to appellant, under the evidence, than she was entitled to. Hence, she cannot complain.

In support of alleged error in striking out the words stated, and giving the instruction so changed, the case of *Gerhauser* v. *The North British and Mercantile Insurance Company* (6 Nev. 18), is cited, but the decision of the court in that case is not applicable to this. In that case the instruction offered was right, while, in this, under the evidence, it was radically wrong. In that case, if the jury found the facts stated in the instruction true, they should have found for defendant. In this, even though they had found the facts stated in the instruction true, still Young was not necessarily a *bona fide* purchaser for a valuable consideration without notice, and hence the jury should not have been instructed to find for defendant, even though they should find those facts true. Before they should have been so instructed, they should have been informed that they must find in addition, other facts necessary to make Young a *bona fide* purchaser for a valuable consideration without notice.

As to alleged error in giving the modified instruction with the rejected words still legible, it is only necessary to refer to *Gerhauser* v. *North British and Mercantile Company* (7 Nev. 193.) The court say: "The modification was made by passing through the words rejected, one stroke of the pen, leaving them still legible, and in that condition it was handed to the jury. If it was feared that this might mislead the jury, the attention of the court should have been called to the fact and a specific exception taken in case of refusal to allow the instruction to be rewritten or the rejected words to be obliterated." (See also in the same case, opinion on petition for rehearing, 199.)

It was the privilege of counsel for appellant to ask leave to rewrite the instruction or obliterate the rejected words. They could not expect the court to do either. Failing to do so, appellant cannot complain.

The next and eighth assignment is the giving of an instruction to the jury which reads as follows:

"As against the plaintiff in this action, Hugh Kerrin could not divest himself of the title to the premises in this action, except by means of a conveyance to a *bona fide* purchaser for a valuable consideration without notice."

If we are correct in the conclusions already arrived at, this instruction was clearly right. By the tenth assignment, appellant urges that the court erred in instructing the jury, that: "If the facts and circumstances proven and shown by the testimony in this action, afford a strong presumption that a fraud has been committed by Kerrin and defendant, against the rights of plaintiff, your verdict must be for plaintiff."

This is objected to on the ground that it misstates the law, and is calculated to mislead the jury in this; that it, in effect, directs the jury to find a verdict for plaintiff, provided the facts and circumstances proven, afforded a strong presumption in their minds that any fraud whatever has been committed by Kerrin and defendant against the right of plaintiff, instead of limiting the instruction to a presumption of that kind of fraud, or such facts as the statute declares shall render a conveyance void against creditors. If the court had not otherwise instructed the jury upon the question of fraud and its effects, this instruction would seem open to appellant's objection that it might mislead the jury. But in addition to this, the court charged the jury as follows: "Our statute provides that every conveyance or assignment in writing, etc., of any estate or interest in lands, etc., made with the intent to hinder, delay or defraud creditors as against the persons hindered, delayed or defrauded, shall be void." * * * "A person desiring to purchase, has a right to trust to the debtor's dominion over his property, and if he purchases in good faith for a valuable consideration, he should be protected in his purchase." "The law vitiates all transfers made with the intent to hinder, delay or defraud creditors, but protects all interests which are conveyed in good consideration and *bona fide*." "An inquiry into the validity of a transfer, under the statute, there-

for involves three points: the existence of an intent to delay, hinder or defraud, the consideration and the *bona fides* of the transfer." If the jury believe from the evidence that the defendant made the purchase and took the conveyance from Young to her, and paid a valuable consideration therefor, without any notice of any intent on the part of Young to hinder, delay or defraud any creditor of Kerrin, then she is entitled to be protected as a *bona fide* purchaser for a valuable consideration without notice, and the jury should find for defendant."

We are of the opinion that under the instructions just quoted, as well as others, the jury must have known they should find for defendant, unless they found such fraud as under the statute makes a conveyance void as to creditors of the vendor.

"It is a rule of law　＊　＊　＊　that in determining whether any given instruction or a portion of a charge be erroneous, or is calculated to mislead the jury, the whole must be taken together and considered as an entirety. ＊ ＊ ＊ If, therefore, taken as an entirety, the charge or instructions fairly state the law, they must be sustained. (*Caples* v. *The Central Pacific Railroad,* 6 Nev. 274.)

The giving of the following instruction to the jury, appellant next assigns as error:

"If you believe from the evidence that the deed from Hugh Kerrin to Jacob Young, Jr., was made with the understanding that Young was to hold the property until such time as Kerrin desired, and that then it should be conveyed by Young as Kerrin should direct, and that such conveyance was intended to hinder and delay the creditors of Kerrin, and that the defendant knew of such understanding, and she further knew the fact before the conveyances were made to her by Young and Kerrin, on the fourth day of September, 1871, that Kerrin was indebted to plaintiff at the time, your verdict must be in favor of plaintiff." Appellant objects to this instruction, on the grounds that it ignores the alleged fact of Kerrin's holding the property in trust for defendant, and does not declare whether the understanding or the intent mentioned must be that of Kerrin

and Young together, or need be that of Kerrin only. In other words, appellant claims if Young was a *bona fide* purchaser of the property from Kerrin for a valuable consideration without notice, that the transmission of the title through him to the defendant purged it of all consequences of fraud on the part of Kerrin, or knowledge on his part. We have already disposed of the question of trust. As to the remaining question, appellant is undoubtedly correct as a general legal proposition, if appellant was not a participant and actor with Kerrin in the fraud. But in our opinion the instruction does in fact state to the jury just what appellant claims it should. The instruction is: "If you believe, etc., that the deed from Kerrin to Young was made with the understanding," etc.

Webster defines "understanding" thus: "Intelligence between two or more persons; agreement of minds; union of sentiments. There is a good understanding between the minister and his people."

The jury, then, were instructed by the court that if they believed \* \* \* that the deed from Kerrin to Young was made with the understanding, etc., that is, with the agreement of both Kerrin and Young, that then they should find for plaintiff. We are of the opinion that the jury understood the instruction as appellant assumes would be a correct declaration of the law, for such is its ordinary meaning. The next and last assignments are the giving to the jury these instructions, which can be considered together, the grounds of exception to each being the same.

"Eighth. If the jury believe from the evidence that the conveyance made by Kerrin to Young on the third of January, 1871, was made and executed for the purpose of hindering, delaying or defrauding the creditors of Kerrin in recovering the debt due by Kerrin to plaintiff, and that the defendant was aware that said conveyance was made for such purpose before the conveyances were made by Young and Kerrin, your verdict must be for plaintiff."

"Sixth. If you believe from the evidence that the consideration paid by Jacob Young, Jr., for the conveyance made by him to defendant was the delivery to him of the

two promissory notes mentioned by the witnesses in this action and the twenty dollars mentioned by said witnesses, and that said defendant obtained such notes from Kerrin without paying a valuable consideration therefor, and that she knew that said conveyance from Kerrin to Young was made to hinder, delay or defraud the creditors of Kerrin, your verdict must be for plaintiff."

"Tenth. If you believe from the evidence that the only consideration paid by the defendant for the conveyance made to her by Young and Kerrin on the fourth day of September, 1871, were the two promissory notes and twenty dollars, testified to by the witnesses, and that no valuable consideration was paid by defendant to Kerrin for said (notes), and that prior to the time when said conveyances were made to her, she knew that the deed made on the third of January, 1871, by Kerrin to Young, was made with the intent to hinder, delay or defraud his creditors, your verdict must be for plaintiff."

Appellant objects to these instructions on the grounds that they directed a verdict for plaintiff, notwithstanding the fact might be that Kerrin received and held the property in trust, and notwithstanding the fact might be that Young was a *bona fide* purchaser of the property from Kerrin for a valuable consideration. The last objection only will be considered.

Instruction eighth charges the jury substantially in the language of the statute: jurors, like other men are presumed to know the law as construed by the courts. Such being the case, the jury could not have understood the court to instruct them to find for plaintiff, if they found Young was a *bona fide* purchaser for a valuable consideration paid by him, without notice, and if appellant was not a participant in Kerrin's fraud, for such is not the law. Besides, if appellant feared the jury were not cognizant of the construction placed upon the statute by the courts, proper instructions enlightening the jury should have been asked.

Instruction sixth charges the jury, substantially, that they must find for plaintiff if they should believe, from the evidence, that the consideration paid to Young was the

two notes and the twenty dollars, and that defendant received such notes from Kerrin without paying a valuable consideration therefor, and she knew of Kerrin's fraudulent intent. In other words, the jury were charged to find for plaintiff if they found that the conveyance from Kerrin to Young was, in fact, without consideration; that Kerrin's conveyance was made with intent to hinder, delay or defraud creditors of Kerrin and appellant knew of such intent. The instruction was correct. The reasons for sustaining the instruction "sixth" are equally applicable to instruction "tenth."

The judgment of the court below is affirmed.