Davis, receiver &c., *vs.* Daniel Graves and Jacob Graves.

Where a grant of land is made to one person, the consideration for which is paid by or in behalf of another, the legal title is in the grantee, notwithstanding the conveyance is made for the purpose of defrauding the creditors of the grantor, and upon a parol trust in his favor.   And so long as the grantee holds such title, the property is subject to the claims of his creditors, to the same extent as any other property to which he has title.

But until such creditors obtain a *lien* upon the property, the grantee's right of alienation is perfect in respect to it; and it is not a fraud upon his creditors for him to convey it to the real owner.

Until the creditors of the grantee have acquired liens upon such land, they have no legal or equitable claims in respect to it higher than, or superior to, those of the grantor; and if the fraudulent grantee reconveys such land to the grantor, before such creditors have acquired any lien thereon, the creditors have no right to have the conveyance set aside as fraudulent.

IN the year 1849 Jacob Graves made a general assignment of all his property, for the benefit of his creditors.   About the same time, with intent to defraud his creditors, he conveyed a large amount of real estate to his brother, Daniel Graves.   In 1851 he caused Mark H. Sibley to convey a valuable piece of real estate to Daniel Graves, the consideration for which was paid by Jacob.   No trust was declared in writing.   But it was alleged by Jacob Graves, in his answer, that Daniel Graves agreed with him by parol, at the time of taking the conveyance, that he would convey the said premises to

him, Jacob Graves, whenever he should be requested to do so. It turned out that Jacob was not in fact insolvent, and in 1853, the debts provided for by the assignment having been paid, the assignees reassigned to him the property remaining in their hands. On the 1st of February, the 23d of May and on the 9th of June, 1856, respectively, Daniel Graves executed three promissory notes to Joseph Cochrane for debts contracted in the year 1856, the title to said real estate still remaining in him, and he having informed such creditor that the same belonged to him. On the 18th day of June, 1856, Daniel conveyed all said real estate to Jacob, without consideration, and was then insolvent. Judgment upon said notes was subsequently obtained by Cochrane, and on proceedings supplementary to execution, the plaintiff was appointed receiver of Daniel. This action was commenced by the plaintiff as such receiver, to set aside said conveyance to Jacob, as fraudulent. The referee decided that the conveyance was not fraudulent, as to the creditors of Daniel Graves, and therefore he dismissed the complaint. From the judgment entered upon his report, the plaintiff appealed.

*J. C. Cochrane,* for the appellant. I. Upon the conveyance of the real estate to Daniel Graves a trust was or was not created. If there was no trust, then the estate became his property absolutely, and a voluntary conveyance was of course a fraud upon his creditors. If a trust was created, it was not contained in the deed to Daniel, and as against his creditors without notice, the trust is void and the conveyance absolute. (2 *R. S.* 140, § 76, *4th ed.* 3 *id.* 21, § 83, *5th ed.*)

II. No trust, title or interest, legal or equitable, resulted to Jacob from the fact of his paying the consideration. (2 *R. S.* 137, § 51, *4th ed. Garfield* v. *Hatmaker,* 15 *N. Y. R.* 475.)

III. The trust in favor of Jacob's creditors could only be taken advantage of by them, and to the amount of their debts, upon the ground that the conveyance is presumed to be fraud-

Davis v. Graves.

ulent as to them. These debts being paid, the conveyance became absolute as to all persons. (2 *R. S.* 137, § 52, *4th ed.*)

IV. As between Jacob and Daniel, the trust was also void, for the reason that it was not in writing. (2 *R. S.* 316, § 6, *4th ed.*)

V. The decision of the referee nullifies the statute. Jacob Graves conveys a large amount of real estate to Daniel by absolute deeds, and allows him to hold the same as his own, for years. Creditors without notice suffer him to contract large debts upon the faith of this very property which he claims to own. The debts being incurred, he reconveys the whole property to Jacob, who has stood by and enabled him to perpetrate the fraud, and probably received the proceeds of these very debts. Yet the referee holds that Daniel's creditors have no right to complain.

*S. Mathews,* for the defendant, Jacob Graves. I. The conveyance by Sibley to Daniel Graves (the consideration having been paid by Jacob Graves) created a resulting trust in favor of Jacob Graves. The statute, however, rendered this trust void, and gave to Daniel an absolute estate in the land, except as to the creditors of Jacob Graves. But the express agreement of Daniel to convey to Jacob when requested, was independent of the trust, and although void at law, because not in writing, created an equitable obligation upon Daniel to convey the land according to the agreement. Upon the faith of this agreement, Jacob paid the whole consideration, except the $1400, and he paid the interest upon the $1400 for five years before the conveyance by Daniel to him. Daniel Graves would not have been allowed, under these circumstances, to retain the land and the money. He would have been required, either to convey the land or restore the money. He chose the former, and no one has any right to complain. (2 *Story's Equity,* § 760.)

II. But the referee has found, that the conveyance was made to Daniel Graves, with intent to hinder, delay and de-

Davis *v.* Graves.

fraud the creditors of Jacob Graves. It is certainly difficult to see what that has to do with the present case. No creditor of Jacob Graves is here to question the validity of that conveyance. Can a creditor of Daniel be permitted to say that the transaction was fraudulent and void? If it were void, then Daniel Graves obtained no title to the land, and the plaintiff in this action is not entitled to it. But it may be said that the transaction was valid between the parties, and that Jacob could not enforce the agreement to convey to him. Neither party, it is true, could compel an execution of the agreement, for the reason that both parties being *in pari delicto*, the courts will not aid either. But it has always been held that the parties to an unlawful contract may themselves voluntarily execute it or reform it; and the court will give effect to such voluntary act. So much and no more was done in this case.

III. It will, however, be insisted that the case comes within the provision of the 76th section of the statute of uses and trusts. (2 *R. S.* 140, *4th ed.*) There are several answers to this proposition; and (1.) The statute refers only to cases of express trusts, such as are authorized by the same statute. The section is as follows: section 76, (§ 64.) "Where an express trust is created, but is not contained or declared in the conveyance to the trustees, such conveyance shall be deemed absolute as against the subsequent creditors of the trustees, not having notice of the trust, and as against purchasers from such trustees without notice, and for a valuable consideration." This section most obviously applies to valid express trusts, and not to parol trusts, or trusts resulting or arising by implication of law. (2.) This section was not intended to render the trust invalid in favor of creditors at large; but only as to such as might acquire a valid lien by judgment or other proceedings against the trustee. (3.) It is, however, sufficient, for the present case, to say, that the trust here is not an express trust. The payment of the purchase money created a resulting trust, or a trust arising by implication of

law; but the true view of it is that the parties held the relation of vendor and purchaser, and Daniel Graves was simply a trustee for his vendee, which is also a trust arising by implication of law.

IV. If the plaintiff should succeed in this action, the effect of it would be that the money and property of Jacob Graves would be applied to the payment of the debts of Daniel Graves. Jacob Graves has never in fact got a dollar of Daniel's property. It would be most inequitable to require him, under these circumstances, to pay the plaintiff's debt.

*By the Court,* E. DARWIN SMITH, J. The conveyance from Sibley to Daniel Graves vested in him the complete legal title to the premises described in the *deed,* free from all claim or trust, legal or equitable, enforceable at law in behalf of Jacob Graves. (1 *R. S.* 728, § 51.) By force of section 52 of the statute, (*Id.* 728,) the conveyance was fraudulent as against the creditors at that time of Jacob Graves, and a trust resulted in favor of such creditors to the extent that might have been necessary to satisfy their just demands. No such creditors have sought to reach the property in the hands of the fraudulent grantee, and it appears that all such creditors were fully paid before the conveyance from Daniel to Jacob Graves.

But if this were not so, no such creditors are now seeking to question the validity of the original conveyance. It is the creditors of *Daniel* Graves whose claims are now before the court in respect to this property. While he held the title to this property, it was subject to the claims of his creditors, as much as any other property to which he had title. But the plaintiff, or the creditor whom he represents, had acquired no lien upon this property before its conveyance to Jacob Graves, its equitable and real owner. Section 76 (or 64 of 1st ed.) of the statute, to which the counsel for the appellant refers, does not affect the question. That section declares that when an express trust is created, but is not contained or declared in

the conveyance to the trustees, such conveyance shall be deemed absolute, as against subsequent creditors of the trustees. But there was in this case no *express trust* declared in any instrument. Daniel Graves was not a *trustee.* He was a fraudulent *grantee* as against the creditors of Jacob Graves, and took an absolute fee in favor of, or as against, his own creditors. No creditor of his was bound to regard him as holding this property upon any *trust, expressed or implied.* He held the absolute title, as we have seen, under section 51 of article 2d " Of uses and trusts." (1 *R. S.* 728.) But until some creditor of his obtained a lien upon it, his right of alienation was perfect in respect to it; and it was not a fraud upon his creditors to convey it to the real owner, Jacob Graves.

He was under no legal obligation to make such conveyance, but he was under a high moral and equitable obligation to do so. And the law is not so unjust that it will deny to men the right, while it is in their power to do so, to recognize and fulfill their obligations of honor and good faith. Until the creditors of Daniel Graves had acquired liens upon this land, they had no legal or equitable claims in respect to it, higher than, or superior to, those of Jacob Graves.

It was not, in equity or good conscience, the property of Daniel Graves, and was, in his hands, only subject to claims of his creditors by way of penalty, and to subserve the general policy of the law in respect to the title, use, enjoyment and transfer of real estate, and to repress and hinder frauds.

The decision of the referee was clearly right, and the judgment should be affirmed.

Judgment affirmed.

[CAYUGA GENERAL TERM, June 6, 1859. *T. R. Strong, Welles* and *Smith,* Justices.]