# Larkin *v.* Mead.

*Bill in Equity by Judgment Creditor, to set aside Conveyance as Fraudulent, and subject Lands to Satisfaction of Judgment.*

1. *Estoppel en pais, by representations of debtor as to title of surety, his fraudulent grantee ; voluntary and fraudulent conveyances.*—When a debtor, against whom a suit is pending, induces his creditor to dismiss the suit, to extend the time of payment, and to accept the notes of himself and a third person as his surety, on the representation that the surety is the owner in fee of a tract of land, which the debtor himself had bought and paid for, taking the title in the name of the surety for the

purpose of defrauding his creditors; as between the parties to the transaction, or their heirs, the facts are to be taken to be as they were represented to be; the creditor having recovered separate judgments on the extended notes, against the debtor and his surety, and seeking, by bill in equity, to subject the land to the satisfaction of the judgment against the surety, which the latter had re-conveyed to his principal, the heirs of the latter are estopped from setting up the fraud under which the surety held the land, or claiming under the re-conveyance to their ancestor; which re-conveyance, if voluntary, is void against the existing creditors of the grantor, and if executed with an intention to defraud the creditors of the grantor, the grantee participating in the fraud, is equally void and inoperative, though full consideration was paid.

2. *Multifariousness; statute of non-claim.*—A creditor, having recovered separate judgments against the principal debtor and his surety, and seeking by bill in equity to subject to the satisfaction of the judgment against the surety a tract of land to which he had the legal title when the debt was contracted, but which, in fraud of his creditors, he afterwards conveyed to his principal; the bill is not multifarious because the heirs of the deceased principal are made parties, the legal title being vested in them, and no relief being prayed as to the judgment against their ancestor; nor can they set up the statute of non-claim as a defense, because that judgment has not been duly presented as a claim against his estate, within eighteen months after the grant of letters of administration, or nine months after the declaration of insolvency.

APPEAL from the Chancery Court of Jackson.

Heard before the Hon. N. S. GRAHAM.

The bill in this case was filed on the 7th September, 1883, by William R. Larkin, against Lemuel H. Lewis, and the personal representative, widow and children of Lemuel G. Mead, deceased; and sought, principally, to subject to the satisfaction of a judgment, which the complainant had obtained against said Lewis, a tract of land which said Lewis had conveyed to said Mead in his life-time, in alleged fraud of his creditors. The tract of land, which contained two hundred acres, was conveyed to said Lewis by J. C. Outerbridge and wife, by deed dated October 27th, 1873, which recited the payment of $4,000 as its consideration; and it was conveyed by Lewis to said Lemuel G. Mead, by deed dated May 28th, 1875, which recited the payment of $3,000 as its consideration. Afterwards, by deed dated March 26th, 1876, said Mead conveyed forty acres of the tract, with about ninety acres of another tract, to said Lemuel H. Lewis, in trust for Mrs. Mary F. Mead, the wife of said Lemuel G. Mead; the consideration, as therein recited, being her relinquishment of dower in other lands which said Mead had sold and conveyed, his wife joining in the conveyances. Copies of these three conveyances were made exhibits to the bill, and it was alleged that Mead paid the entire purchase-money to Outerbridge, and had the title conveyed to Lewis, who was his nephew, for the purpose of hindering, delaying and defrauding his creditors; that the conveyance by Lewis to Mead was without consideration, and was executed

[Larkin v. Mead.]

with the intent to hinder, delay and defraud the creditors of said Lewis; and that the subsequent conveyance by Meade to Lewis, in trust for Mrs. Mead, was without consideration, and was executed with the fraudulent intent of reducing the area of the tract of land, on which he then resided, so that he might claim the residue of the tract (one hundred and sixty acres) as a homestead exemption.

The complainant's judgment against Lewis was rendered in the Circuit Court of Jackson county, on the 8th March, 1879, and was founded on two bonds, or promissory notes under seal, executed by said Mead and Lewis jointly; each for $634.92, dated December 4th, 1874, and payable one and two years after date. These notes were signed by Lewis as the surety of Mead, and were given in settlement and extension of a former debt, on which a suit in chancery was then pending, under circumstances stated in the opinion of the court, as alleged in the bill. Another judgment was recovered by the complainant on these notes, against said Mead, on the 26th October, 1877. It was alleged that an execution had been regularly issued on said judgment against Lewis, and returned "No property found;" that executions had been regularly issued on the judgment against Mead until his death, which occurred on the 14th January, 1878; that an execution, regularly issued after his death, was levied on the tract of land, which was thereupon claimed by the widow and children as a homestead exemption; that Lewis was insolvent, and that the estate of Mead had been reported and declared insolvent.

On these allegations, the bill asked the appointment of a receiver to take charge of the lands, and further prayed relief as follows: "That on the hearing said conveyance executed by said Lewis to said Mead on the 28th May, 1875, may be declared fraudulent and void as against your orator's said judgment of date 8th March, 1879; that the tract of land therein mentioned and described may be declared subject to the payment of said judgment, with all costs and interest thereon accrued; that your orator may have a money decree against said Lewis for said sum, with an order for the sale of said land for the satisfaction thereof; that said deed from said Mead to said Lewis, as trustee for said Mary F., of date March 20th, 1876, may be declared fraudulent and void; that the same may be cancelled, and said tract of land sold under a decree of this hon. court, freed from such cloud on the title, for the satisfaction of said judgment; and for all other and further relief," &c.

A demurrer to the bill was filed in the name of the infant defendants, by their guardian *ad litem*, assigning the following as grounds of demurrer: (1.) "Said bill attacks, as fraudulent, a deed from Lewis to Mead, and a deed from Mead to

Lewis, and alleges that said deeds were executed to defraud complainant as the owner of a certain debt, secured by bond made by both Lewis and Mead ; and shows that the land would be equally liable and subject to said debt, whether held by Lewis or by Mead." (2.) "The bill shows that said tract of land consists of two hundred acres, and that one hundred and sixty acres thereof are exempt from execution, showing that only forty acres of the tract could be condemned, and said forty acres is not so described or identified as to enable the court to render a decree for its sale." (3.) " Said bill is vague and uncertain, in this : that it does not appear whether the pleader seeks to condemn the land as the property of said Lewis, or of said Mead ; nor whether he seeks to condemn it to pay the judgment against said Lewis, or the judgment against said Mead." (4.) " Said bill does not show that said alleged judgment against Mead was ever presented to his administrator, as a claim against his estate." (5.) " Said bill shows that said estate was duly declared insolvent, and does not show that said judgment was ever filed as a claim against said insolvent estate." (6.) " Said bill shows that the complainant has a full and complete remedy at law." (7.) "Said bill is multifarious, in seeking to collect two separate judgments, and in seeking a personal decree against Lewis, and attacking their several deeds as fraudulent." (8.) " Said bill seeks to condemn said land because fraudulently conveyed by Lewis to Mead, when it appears by the bill that Mead was in equity the owner of the land, and that Lewis really had no interest in it."

The chancellor sustained the demurrer as to the 4th and 5th grounds specially assigned, and overruled the others. The complainant appeals from this decree, and assigns as error the decree sustaining the demurrer as stated ; and by consent, entered of record, the guardian *ad litem* of the infants assigns as error the overruling of the demurrer on the other grounds specified.

R. C. BRICKELL, and J. E. BROWN, for appellant.

D. D. SHELBY, *contra.*

STONE, C. J.—Much that is found in the present bill appears to be unnecessary to a settlement of the questions sought to be raised. The history of the life-insurance, alleged to have been taken out by Mead on the life of his first wife, the purchase and various conveyances of the Outerbridge lands, Larkin's claim on Mead for moneys paid by him as surety to the Townsend estate, and the attempt by equitable proceeding, instituted by the former, to realize the sum for which the latter had become liable to him in consequence of said payment to

[Larkin v. Mead.]

the Townsend estate, out of the insurance money which fell due on the death of Mrs. Mead—these, it would seem, comprise all the bill need have shown, anterior to the making of the notes, which the present bill seeks to collect.

According to the averments of the bill, about the year 1870, Larkin paid, as surety for Mead, a sum of money between three and four thousand dollars. Before that time, Mead had taken out an insurance policy on the life of his wife, payable to himself, in the sum of ten thousand dollars, and had paid the annual premiums as they matured. For the purpose of defrauding his creditors, he, Mead, had procured the life-policy on his wife to be so changed, as that the loss, or insurance money, to fall due at her death, was made payable to Lewis, who was his nephew, a young man without means; and the money thus to be paid to him was in secret trust for the benefit of Mead. In 1873, Mead purchased the Outerbridge land, paid the purchase-money, four thousand dollars, and had the title made from Outerbridge and wife to Lewis, in like secret trust for Mead's benefit, and with like intent to defraud his creditors. Larkin instituted proceedings in the Chancery Court, to intercept the life-insurance money, and to have himself reimbursed out of it for the money he had paid the Townsend estate, as surety for Mead. Mead, with his family, lived on the lands which are the subject of this suit, while Lewis, in whom the title rested, was an unmarried man, and did not live on the lands. Thus matters stood, as the bill alleges, when negotiations and settlement took place, to be presently stated.

The further case made by the bill is substantially as follows: Mead desired and importuned Larkin to dismiss his said chancery suit, promising and agreeing, as inducement therefor, to give him good personal security, and offering said Lewis as such surety. As a reason why Larkin should accept Lewis as surety, Mead represented that he, Lewis, was amply solvent, and that he owned said Outerbridge lands in fee simple. Influenced by this persuasion, and relying on Mead's said representations, finding the title to be in Lewis, and not knowing that he, Lewis, had not paid Outerbridge for the lands, Larkin agreed to extend the said indebtedness of Mead one and two years, and to dismiss said suit, if Mead would execute to him notes, or bonds, with Lewis as surety, and payable at one and two years. The notes or bonds were executed by Mead and Lewis, bearing date December 4, 1874, due at one and two years, and being delivered to Larkin, he thereupon dismissed his said chancery suit.

In less than six months after this settlement, viz., May 28, 1875, Lewis, by deed of bargain and sale, reciting a consideration of three thousand dollars paid, conveyed the Outerbridge

lands to Mead, thus leaving him, Lewis, without means to pay the said debt to Larkin. This, it is charged, was done without consideration, and with intent to delay, hinder and defraud Larkin and his other creditors. The notes or bonds not being paid, Larkin instituted suits against the makers, and recovered several judgments—the one against Mead, October 26, 1877; the one against Lewis, March 8, 1879. On these judgments executions have been issued, and returned "No property found." Mead died in 1878; there has been administration on his estate, and the estate has been declared insolvent. No date is given in the bill, when administration was sued out, nor when the estate was declared insolvent. The bill fails to aver that the claim was ever presented to Mead's administrator, or filed against the insolvent estate. The present suit was instituted September 7, 1883.

Before the judgment was rendered against Mead, he conveyed forty acres of the land to Lewis, in trust for his (Mead's) wife. This left only one hundred and sixty acres in Mead, which is claimed as exempt homestead; and if rightly claimed, the estate having been declared insolvent, the title of the exemption is a fee, leaving nothing either in possession or reversion for Larkin. Hence his interest to have the property declared Lewis', and not Mead's. The bill seeks to have the lands condemned and sold as Lewis' property.

One form of the defense set up is, that, according to the averments of the bill, Mead purchased and paid for the land, and had the title placed in Lewis in secret trust for him, Mead, in fraud of his (Mead's) creditors; that when Lewis subsequently conveyed the land to Mead, he placed the title where it ought to have been; and therefore such conveyance can not be a fraud on the creditors of Lewis, no matter what his intention may have been. The following authorities are referred to as supporting this position: Bump on Fraud. Con. 223: Wait on Fraud. Con. §§ 176, 398; *Clark v. Rucker*, 7 B. Monroe, 583; *Davis v. Graves*, 29 Barb. 480; *Cramer v. Blood*, 48 N. Y. 684; *Stanton v. Shaw*, 3 Baxt. (Tenn.) 12. *E contra, Chapin v. Pease*, 10 Conn. 69. We will not decide this question. We will hereafter show why we need not express our views on it.

It will be remembered that, when Mead induced Larkin to dismiss his suit to subject the proceeds of the life-policy, and to extend time of payment on his notes or bonds with Lewis as surety, he succeeded in his wish and aim, on the representation that Lewis held a fee-simple title to the lands. On the strength of this representation, as the bill avers, Larkin was induced to dismiss his suit, materially altering his previous position, and to postpone his right of pressing his claim to speedy collection.

This presents all the elements of an estoppel *en pais.* In *Montefiori v. Montefiori,* 1 Wm. Blackst. 363, Joseph Montefiori was engaged in a marriage-treaty, and, to promote his aims, Moses, his brother, gave him a note for a large sum of money, as the balance of accounts between them. No such balance existed. After the marriage, the note was returned to Moses; and the question was, whether the latter should make it good. Lord MANSFIELD said: "The law is, that where, upon proposals of marriage, third persons represent anything material, in a light different from the truth, even though it be by collusion with the husband, they shall be bound to make good the thing in the manner in which they represent it. It *shall be,* as represented to be." This was said more than a century ago. He added: "No man shall set up his own iniquity as a defense." In the leading case of *Heane v. Rogers,* 9 Barn. & Cress. 577, the principle is thus stated: "There is no doubt that the express admissions of a party to the suit, or admissions implied from his conduct, are evidence, and strong evidence against him; but we think that he is at liberty to prove that such admissions were mistaken, or were untrue, and is not estopped or concluded by them, unless another person has been induced by them to alter his condition; in such case, the party is estopped from disputing their truth, with respect to that person, and those claiming under him, and that transaction."—See, also, *Hill v. Huckabee,* 70 Ala. 183; *Smith v. Caldwell,* at prevent term, *ante,* 157; Bigelow on Estoppel, 406, 475; Herman on Estoppel, § 409; *State, ex rel. v. Trustees,* 14 Ohio St. 569; *Burleson v. Burleson,* 28 Tex. 383.

Applying this principle to the case in hand, Mead, and those claiming in his right, unaided by anything else, are estopped from denying that Lewis, at the time the notes or bonds were executed, was owner of the lands in fee simple. As to them, he, Lewis, held the fee simple, unaffected by any fraud, or secret trust, attending its acquisition. The rule would be the same, if he had held the title for Mead, untainted by fraud. Lewis, then, being, as to this controversy, the *bona fide* holder and owner of the title in fee when he became bound for the debt to Larkin, the case is brought within the familiar principle, that a voluntary conveyance by one indebted, of property which can be the subject to seizure for his debts, is fraudulent *per se* as against existing creditors. Of course, if there be, in such case, an intention to delay, hinder or defraud, of which the grantee had knowledge, the conveyance would be alike inoperative, even though full consideration was paid.—2 Brick. Dig. 21, § 100; *Lehman v. Meyer,* 67 Ala. 396; *Lehman v. Kelly,* 68 Ala. 192; *Buchanan v. Buchanan,* 72 Ala. 55; *Zelnicker v. Brigham,* 74 Ala. 598. It results, that the man-

ner of the acquisition of the land can exert no influence on the question of subjecting it to Lewis' debt, as being transferred by him to Mead in fraud of his creditors.

There is nothing in the argument that this bill is multifarious. As we have said, its purpose and prayer are, that the lands be sold in payment of the Lewis judgment. The title of the lands is in the Mead heirs. Hence the necessity of making them parties. We need not consider whether, if the bill had sought relief under both judgments, it would thereby have been rendered multifarious. The two judgments are for one and the same debt, and the one tract of land is the sole subject of the contention. It would be difficult to frame two bills applicable to the subject-matter. We decide nothing on this question. Nor need we decide whether or not the averments of the bill are such, that the question of non-claim, and the alleged failure to file the Mead judgment against the insolvent estate, can be raised by demurrer. Neither was necessary, in this attempt to subject the land to the payment of the Lewis judgment. We may add, if the averments of the bill are true, the conveyance of the forty acres of land to Lewis, in trust for the second Mrs. Mead, was without consideration and fraudulent, and she can not set up claim of *bona fide* purchase.

It results from the principles declared above, that none of the grounds of demurrer are well taken, and the chancellor erred in sustaining grounds numbered four and five. The question of homestead is not raised by this record, and we do not consider it.

On the appeal by Larkin, the decree of the chancellor is reversed, and here rendered, overruling said grounds of demurrer numbered four and five.

On the appeal by Mead *et al.*, there is no error in the record.

Reversed and rendered, in case of *Larkin v. Mead et al.*