## J. E. AND FANNIE P. FERGUSON v. E. T. REED.

1. DEED OF TRUST.—See a trust deed construed, and acts of the trustee held to be unauthorized under it, and therefore void.
2. PRACTICE.—A court and jury cannot disregard a credit on a not sued on, allowed by the plaintiff in his petition.
3. MARRIED WOMEN.—A money judgment against a married woma upon her husband's note, to secure which she had joined in a tru. deed for part of the homestead, is unauthorized.
4. HOMESTEAD.—A transfer by husband and wife of an undivided inter est in their homestead, carries with it the right to enjoy the interest so conveyed, and the consequent right to the vendee to compel partition by any means provided by law.

APPEAL from Bell.   Tried below before the Hon. J. P. Osterhout.

On 10th December, 1867, J. E. Ferguson and E. T. Reed entered into a partnership for the purpose of running a mill on the Salado, in Bell county.   It was agreed that Reed should pay Ferguson $2,768, part in cash and part at a future day.   They were to share equally the mill property and its profits.   Ferguson was to expend $2,000 cash on the mill, Reed to refund half of the amount so expended.   To perfect this partnership, Ferguson and wife, on the same day, made a deed to Reed for the undivided half of two small tracts adjoining, and together containing about fifty acres, on which the mills were situated.

March 1, 1868, Ferguson obtained a deed for one hundred acres of land adjoining the "mill tract," on which he, with his family, resided, but all the land was designated and held as homestead.

January 5, 1871, the partnership was dissolved; Reed reconveying the half interest in the "mill tract," and Ferguson executing his note for $4,000, coin, to Reed, and, with his wife, executing to William Lowry, trustee, a trust deed to five sixteenths of the "mill tract," and of the grist and saw mills, cotton-gin and press, &c., situated on the tract, to secure the payment of the said four thousand dollars, the interest of Reed so bought by Ferguson, Ferguson's interest being estimated at $12,000.   The trust deed is as follows:

"STATE OF TEXAS, }
    *County of Bell.* }

"Whereas, on the 10th day of December, 1867, J. E. Ferguson and E. J. Reed formed and entered into articles of partnership for erecting a mill, and running the same and other machinery in the county of Bell, on the Salado creek, in which each of said parties was equally interested, and to share equally in the expense and profits of the same; and to carry out which agreement James E. Ferguson and Fannie P., his wife, by their deed of that date, conveyed to said E. T. Reed

the undivided half of the tract of land on which said mill is situated, with the hereditaments, appurtenances, improvements, mill machinery, and other things thereunto appurtenant; and in consideration thereof it is now here agreed that the said E. T. Reed has paid the sum of $4,000 in gold coin, and other things, which have been expended in erecting said mills, and in other things contemplated in said partnership; and that said J. E. Ferguson has in like manner expended the sum of $12,000.

"And the said parties wishing to dissolve their partnership and settle all matters between them; and the said J. E. Ferguson being willing to repay said Reed the money invested by him, as aforesaid, for his interest in the said mill machinery, &c., and the said E. T. Reed by his deed, bearing even date herewith, having conveyed to said J. E. Ferguson all his interest and property in and to the land, mill, machinery, &c., aforesaid, in like manner and condition as by said deed and article he acquired the same. The said J. E. Ferguson in consideration thereof does hereby promise, agree, and bind himself to pay the said E. T. Reed the said sum of $4,000, in gold or silver coin of the United States, with 10 per cent. interest thereon, from this day until the same shall be fully paid, which shall be paid as follows: On the 5th day of January, each and every year, the said J. E. Ferguson shall pay to the said Reed the sum of $900, until the said sum of $4,000 and interest shall be fully paid, which is estimated in this way, to wit: On the 5th day of January, 1872, he shall pay the said Reed, of the principal, the sum of $500, and of interest, $400, making the sum of $900, which is interest upon the whole $4,000 up to that date. On January 5, 1873, he shall pay of principal $550, and of interest $350, making $900. On January 5, 1874, he shall pay of principal $600, and of interest $300, making $900. On January 5, 1875, he shall pay of principal $650, and of interest $250, making $900. On January 5, 1876, he shall pay of principal $700, and of interest $200, making $900. On January 5, 1877, he

shall pay of principal $750, and of interest $250, making $900, &c., &c.   *   *   *

"And to secure the payment of the interest aforesaid, as the same shall become due, the said J. E. Ferguson has executed to the said E. T. Reed his promissory note, of even date herewith, with good and sufficient personal security, for the sum of four hundred dollars, payable twelve months after date, which is for the interest falling due on the 5th day of January, 1872. And he, the said Ferguson, promises and binds himself to execute a like note on the 5th day of January, 1872, with like good personal security, due twelve months thereafter, for $350, which will be for the interest falling due January 5, 1873. And on the 5th day of January, 1873, he will execute a like note for $300, with like security, falling due 5th January, 1874, for the interest then falling due, and on 5th January, 1874, he will execute a like note for $250, with like security, due 5th January, 1875, being for interest then falling due, and on 5th January, 1875, he will execute a like note, with like security, for $200, due 5th January, 1876, for the interest then falling due; and if the payments of principal and interest are regularly made to that time, January 5, 1876, it is deemed that the security hereinafter provided will be ample for both principal and interest.

"And to secure the payment of both the principal and interest of the said sum of money, to be punctually made at the time specified, know all men that we, the said J. E. Ferguson and Fannie P. Ferguson, his wife, for the consideration aforesaid, do by these presents grant, bargain, sell, and convey unto Wm. Lowry, of Bell county, five parts, in sixteenths, that is, five sixteenths of the two following tracts of land, situated on Salado creek, in Bell county, and including the mill site, mill houses, cotton gin and press, saw and grist mill, and other improvements and machinery thereon, and known as the 'Chalk Mills,'—(giving description of the two tracts, of about fifty acres,)—together with hereditaments,

37

&c., thereto belonging, to have and to hold unto him, his heirs and assigns forever, to and for the uses, trusts, and purposes hereinafter set forth.

"Now, if the said J. E. Ferguson shall well and truly pay each and every of the sums of money, both principal and interest, in this article above specified to be by him paid to the said E. T. Reed, at the time the same shall become due and payable, then this deed shall be null and void and of no effect. But should the said J. E. Ferguson fail and refuse to pay the several sums of money above described to be paid by him as principal parts of the said $4,000, and to pay the interest aforesaid not otherwise secured, or either of them or any part thereof, when the same becomes due and payable, or should he fail, by note, with good personal security, to secure the payment of the interest, as he has above agreed to do, then full power and authority is hereby given the said William Lowry, as trustee, upon request of the said E. T. Reed, *to* sell the said five sixteenths of the said land, mill machinery, &c., above mentioned, for the payment of all said sums of money which may then be due or unpaid, or the payment thereof not be secured as aforesaid; but said sale shall be made by offering one sixteenth at a time, until the whole amount then due or not secured shall be paid. Said sale shall be made at the court-house door of Bell county, at the time required by law for the sheriff in making sales of real estate under execution; and said trustee shall first pay all reasonable costs and charges of said sale, and pay to said Reed such sums as may then be due unsecured as aforesaid, and the balance he shall pay upon the principal sum next to become due; and such sale may be made from time to time, whenever said sums of money may be due and unpaid or unsecured; but should the whole of said five sixteenths be sold, leaving any of said sums of money unpaid, then the whole amount thereof remaining unpaid shall be due and payable at that time and on the happening of that contingency. And should anything remain in the hands of the said trustee after

the full payment of all the costs, charges, principal and interest aforesaid, the same shall be paid to the said J. E. Ferguson. In case the sale contemplated in the above deed shall be made, it shall be made at the court-house door of Bell county, on the first Tuesday in the month, and after notice thereof being by said trustee made by posting advertisements thereof, one on said court-house door and two others at two other public places in Bell county; and the compensation of said trustee for making such sale shall be such as then by law allowed to sheriffs for collecting money under execution.

"In witness whereof, we hereunto set our hands and affix our seals. Done at Belton, this 5th January, 1871.

"(Signed)     JAMES E. FERGUSON.

FANNIE P. FERGUSON."

Which was duly acknowledged. Under this deed, February 6, 1872, Lowry, the trustee, sold the five sixteenths, and Reed became the purchaser, paying $500 for the first, $501 for the second, and $100 each for the remaining sixteenths. Ferguson was present at the sale, and forbade the sale after the first two sixteenths had been sold.

Ferguson had executed his note with security for $400, January 5, 1871, and due one year thereafter, for the first year's interest, upon which suit had been brought, judgment rendered and the money collected.

Reed brought suit against Ferguson and wife 2d March, 1872, for partition of the mill-tract and property therein, praying for sale in event the property could not be partitioned. Judgment was asked for the $4,000 note due, less the amount for which the land was sold by the trustee.

Ferguson and wife resisted judgment, claiming the land as part of their homestead and protected from judicial process, also attacking the sale made by the trustee for want of authority.

Upon the trial the jury found a verdict on special issues, which sufficiently appear by the response of the jury to them, as follows:

" We, the jury, find 1st, For plaintiff the sum of $2,829.10 gold dollars as the principal, and interest at 10 per cent. from 5th day of January, 1872, to April 10, 1873, amounting to $357.56, making in the aggregate $3,186.66, after deducting $130 fees of dowry as the trustee."

" 2d, Find for plaintiff his interest five sixteenths as purchased under deed of trust, and recommends said interest be severed by commissioners of partition, if practicable, to be appointed by the court, otherwise to be sold, and eleven sixteenths of the proceeds paid to defendants and five sixteenths to plaintiff.

" 3d, Find plaintiff did become the owner of five sixteenths of said mill property, containing fifty acres of land with all improvements and machinery thereon, on 6th February, 1872.

" 4th, Find said mill property to be a part of defendants' homestead; and defendants conveyed five sixteenths of said mill property, with everything necessary to the full enjoyment of the same, to said plaintiff, by deed of trust January 5, 1871, and the sale under it, and if said five sixteenths cannot be severed otherwise, then the whole of said mill property of fifty acres to be sold, including all improvements and machinery to the same belonging, and eleven sixteenths of the proceeds paid to defendants and five sixteenths to plaintiff."

Upon this, judgment was rendered against both Ferguson and his wife for the amount of money found by the jury, also appointing commissioners to make partition at the same term; upon report of the commissioners that partition was impracticable a decree was entered ordering sale of the property for partition.

From this judgment the defendants appealed. The errors assigned sufficiently appear in the opinion.

*L. C. Alexander* and *X. B. Saunders,* for appellants, cited Lynch *v.* Elkes, 21 Tex., 230; Wright *v.* Wakeford, 17 Ves. Jr., 454; Mason *v.* Martin, 4 Md., 125; Gibson *v.* Jones, 5 Leigh, 370; Hill on Trustees, 478, and note; Sampson & Keene

*v.* Williamson, 6 Tex., 110; Parker Co. *v.* Sewell, 24 Tex., 239.

*McGinnis & Lowry,* for appellee.

MOORE, ASSOCIATE JUSTICE.—On the trial, of this case in the District Court, the judge instructed the jury to the effect that if they believed from the evidence that the defendant failed to pay the amount of principal and interest, as stipulated and agreed in the deed of trust, as the first payment for the share in the land, mills, machinery, &c., situated thereon, sold him by Reed, and had not secured the second year's interest by his note with good and satisfactory security, as also agreed, then the sum of twelve hundred and fifty dollars was due Reed, and the trustee was authorized to sell sufficient of the trust property, selling one sixteenth at a time, to raise that amount.

This instruction is clearly erroneous, and was calculated to mislead the jury to the manifest injury of appellants. It is evident from this, as well as the succeeding portions of the charge, that the court misconceived the true import and purpose of the trust deed. For although it is said in the deed that, if Ferguson shall "pay each and every of the sums of money, both principal and interest  *  *  *  to be by him paid to the said E. T. Reed at the time the same became due and payable, then the deed shall become null and void," and it may therefore be well held that the deed was intended as a security for the payment of the several sums mentioned in it as interest as well as principal, yet it must be remembered that the annual installments of interest up to 1876 were to be secured at the first of each year by a note with good and satisfactory personal security, while the subsequent interest was not to be secured otherwise than by the deed. And in providing for the sale of the trust property in case of a default, it is expressly declared that should Ferguson "fail and refuse to pay the small sums above described, to be paid

by him as principal parts of said sum of $4,000, and to pay the interest aforesaid not otherwise secured, or either of them, or any part thereof, when the same becomes due and payable, or should he fail by note with good personal security to secure the payment of the interest, as he has above agreed to do, then full power and authority is hereby given * * * to sell * * * for the payment of all said sums of money which may then be due and unpaid, or the payment thereof not secured as aforesaid." Again, when there is a sale, the deed provides that the trustee, after paying all reasonable costs and charges, shall "pay to the said E. T. Reed such sums as may then be due and unsecured as aforesaid, and the balance he shall pay upon the principal next to become due." A careful perusal of the deed shows that it was never contemplated that the trustee should sell for a failure on the part of Ferguson to discharge, when due, the interest notes which were otherwise secured than by the deed. It follows that not only the instruction of the court in this particular was erroneous, but it must also be held that the sale of at least three sixteenths of the trust property was, at the time the sale was made, wholly unauthorized, and that Reed acquired no right whatever to it by his purchase. The sale of two sixteenths of the property raised more than was needed to pay the amount for which the trustee was then authorized to sell, and his sale of the remaining three sixteenths was in violation of the terms of the deed. This unauthorized action of the trustee, which has been sanctioned and approved by the court below, requires not only a reversal of the judgment, but will also preclude Reed from all right to relief in this case, unless he may be entitled to it, as the owner, (if the sale was valid to that extent, which we are not now called upon to decide,) of the two sixteenths of the property, to the sale of which, it seems, Ferguson made no objection.

The court also erred in giving judgment for a larger amount of principal than Reed claimed in his petition. This seems to have occurred by the jury deducting a hundred and

thirty dollars and ten cents, as commissions for the trust, from the sum for which the property sold. It was stipulated in the deed that, in case of a sale, the trustee should receive the same fees as are allowed by law to sheriffs selling property under execution. But there was no evidence that the trustee retained even the commissions to which he was entitled by the deed; and the plaintiff in his petition, as we have said, gave credit for the full amount for which the property was sold.

The court also erred in giving judgment against Mrs. Ferguson for the balance due to Reed for his interest in the partnership property. It is not shown that she undertook or bound herself in any way for its payment, if, indeed, it was permissible for her to have done so.

The objection that the two tracts of land referred to in the trust deed were a part of the homestead of the appellant, and therefore the court could not order their sale for partition, although the plaintiff below might be the owner of an interest in them, is, we think, without force. If it is conceded that appellants owned the hundred-acre tract, upon which the statement of facts shows they resided when the undivided half of the two tracts upon which the mills are situated was sold by them to Reed in December, 1866, though it appears that their deed for it, which is the only evidence of title in the record, is of a subsequent date, and that these three tracts were part and parcel of their homestead; still, we think, it must be admitted that by this deed they vested an interest in the land therein described of which the purchaser cannot be deprived by reason of their pre-existing right in it. While a homestead, no doubt, may include two hundred acres of land, though parts of it may have been acquired at different times and from different persons, still the Constitution does not fix or prescribe the number of acres of which it shall consist, or require that it shall always contain the quantity of land which may have been once appropriated to this purpose; and it cannot be questioned that the owners may sell

or otherwise segregate a part of it, if they choose to do so, provided the consent of the wife is manifested in the manner prescribed by law for the sale or transfer of homestead and separate property of married women. To doubt this, would be to deny that the whole of a thing includes all its parts, and to say that a part is of more importance than the whole. By the deed to Reed, Ferguson, and wife, whatever may be their rights, as between themselves or as to third parties, in respect to the undivided one half which was not conveyed, must be regarded, as to Reed and for the purpose for which said deed was executed, as having voluntarily withdrawn and relinquished their homestead rights to the land described in said deed, and limited their homestead to the one-hundred-acre tract, which they still retained. The exercise and enjoyment of the rights and privileges conferred upon Reed by the sale to him of an equal undivided half of the land described in the deed, is altogether inconsistent and irreconcilable with its continued use and appropriation by appellants as a homestead. It would operate as a fraud upon him to hold that his title was incumbered with any such limitation and condition.

An absolute right to an undivided half of the land having become vested in Reed, the title which appellants subsequently acquired by his sale to Ferguson of his interest in the partnership property, was liable for the purchase-money before the homestead rights could reattach to it. Certainly it cannot be objected that security was taken for the payment of the purchase-money by the trust-deed upon five sixteenths of the tract, when by law the vendor could have claimed a lien upon half of it.

The objection that the land is a part of appellant's homestead resolves itself into the assertion of this broad proposition, that, where there is not more than two hundred acres in the entire tract, if one tenant in common goes into possession and resides upon the land with his family, it becomes his homestead, and a partition cannot be had at the instance of the other part owners through the court. And especially

is this the case when from its nature, the property itself is not susceptible of an actual division. The constitutional inhibition against the forced sales of homesteads, it is believed, has no application to such a case, and can be given no such unreasonable and inequitable construction. The right of the occupant, in whatever light we regard it, can only extend, as between the co-tenants, to his part of the land. No right of homestead can attach to land which he does not own. Certainly it would in effect do so if by reason of his homestead claim he could deprive the other co-tenants of the use and enjoyment of their parts of it.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.