[No. 1642.]

IN THE MATTER OF THE ESTATE OF JOHN J. QUINN, DECEASED. FRANK P. QUINN, AS AN EXECUTOR OF THE WILL AND ESTATE OF JOHN J. QUINN, DECEASED, APPELLANT, *v.* ABBIE W. QUINN, WIDOW AND EXECUTRIX OF THE ESTATE OF JOHN J. QUINN, DECEASED, AND GUARDIAN OF RAY L. QUINN AND RUTH QUINN, MINORS, RESPONDENTS.

HOMESTEAD—ALLOWANCE TO WIDOW AND CHILDREN—APPEAL FROM ORDER—QUESTIONS REVIEWABLE—DESCRIPTION OF HOMESTEAD PORTION OF PROPERTY—SUFFICIENCY OF ORDER.

1.  Probate act, sec. 255 (Comp. Laws, sec. 3041), authorizes probate appeals, to be governed in all respects as appeals in actions at law. Practice act, secs. 332–337 (Comp. Laws, secs. 3427–3432), regulate the filing, serving, settling, and certifying of statements, and under these sections the Supreme Court has held that, in the absence of a statement, only errors appearing on the face of the judgment roll can be reviewed. *Held*, on appeal from an order setting apart a homestead to a widow and minor children, that, treating the petition, reply, and order as constituting a judgment roll, and there being, in the absence of a statement, nothing to show that the homestead was set apart from the decedent's separate property, or whether testimony on that issue was taken, or whether evidence was excluded and exception taken, an objection to the homestead allowance as made from such separate property could not be reviewed, and the appeal would be *pro tanto* dismissed.

2.  It is no objection to the allowance to a widow and minor children of a $5,000 homestead, out of property valued at $7,500, that the order fails to define the boundary or extent of the premises necessary to reach the sum allowed, and fails to find whether they can be divided.

APPEAL from the Second Judicial District Court, Washoe County; *B. F. Curler*, Judge.

Proceedings for the settlement of the estate of John J. Quinn. From an order setting aside a homestead to the widow, Abbie W. Quinn, and the minor children, of whom

she is guardian, Frank P. Quinn, executor, appeals. **Dismissed in part, and affirmed in part.**

The facts sufficiently appear in the opinion.

*Thomas E. Haydon*, and *Torreyson & Summerfield*, for Appellant:

I.   John J. Quinn died on the 20th day of January, A. D. 1902,  He made his will on the 17th day of April, 1901, providing therein for payment of his funeral expenses and of his last sickness and allowance to his family, bequeathing to his mother, Mrs. C. H. Frick, $500, and to his brother, W. H. Quinn, $500, and after paying his debts devised and bequeathed to his wife, Mrs. A. W. Quinn, and their two children, Ray L. and Ruth Quinn, the undivided one-half of all his real and personal property, it being, as stated in his will, "all his separate estate," and the half of the income of such real and personal property.   He further provided in such will that in case she insisted on holding, and held, the whole of the Arcade Hotel and lots as her own, then one-half the value and income of said hotel property should be deducted from his other real and personal property and added to the share of his other three children, Addie Merchant, Frank and Minnie Quinn.   And such will provided that he gave, bequeathed, and devised to his other three children, after paying his debts and expenses, the other undivided one-half of all his real and personal property and one-half the income thereof to his other three children, Addie Merchant, Frank and Minnie Quinn, share and share alike, one-third to each undivided.   And said will further provided in case his mother devised to Frank P. Quinn the whole of the brick building and grounds immediately north of his store building and residence, all in Block P of Reno, then out of his real and personal property not devised to his wife and Ray and Ruth, then that there should be deducted out of the advances made to his mother and out of the proceeds of his other real and personal property there should be a sufficient value in money and property added to the shares of Addie Merchant and Minnie Quinn to make their proportions equal to that of Frank Quinn.   The deceased advised his wife and children in his will to keep as nearly as possible all his real and per-

sonal property together, as it was well invested and brought
a good income. He willed and desired that his wife should
be appointed guardian of their minor children and should
care for their interest in the undivided half of the property
devised and bequeathed to her for them, and he appointed his
wife as executrix and Frank P. Quinn executor of his will,
to serve as such without being required by the court to give
bonds. The provisions of the will of deceased are briefly
referred to showing that deceased fully understood the fact
that the property he sought to dispose of by his will was his
separate property, and that on his death the homestead
declaration which he and his wife executed became "*functus
officio*," or entirely void. Under section 1 of act of 1873
defining the right of husband and wife (Comp. Laws 1900,
510) all property of the husband owned by him before mar-
riage and that acquired by him afterwards by gift, bequest,
devise or descent, with the rents, issues, and profits thereof,
is his separate property. The same provisions are made in
the same section as to a wife. By the same act of 1873
(Comp. Laws, 1900, 527) it is provided that, "except as men-
tioned in section 19," "neither husband or wife has any
interest in the property of the other." Section 19 allows
either husband or wife to contract with each other as to their
property or with other persons subject to rules as to persons
occupying confidential relations with each other. Under
section 31 of article IV of the constitution of Nevada it is
provided that "all property both real and personal of the
wife, owned or claimed by her before her marriage, and that
acquired afterwards by gift, devise or descent shall be her
separate property; and laws shall be passed more clearly
defining the rights of the wife in relation, as well to her
separate property as to that held in common with her hus-
band." Laws shall also be passed providing for the regis-
tration of the wife's separate property. By section 30, article
IV, of the constitution a homestead as provided by law shall
be exempt from forced sale under any process of law and
shall not be alienated without the joint consent of husband
and wife when that relation exists. See certain exceptions
"And laws shall be enacted providing for the recording of
such homestead within the county in which the same shall be

situated." Now it is self-evident that the act defining the rights of husband and wife, approved March 10, 1873, and the act to exempt the homestead and other property from forced sale in certain cases, were made in accordance with the provisions of the constitution herein cited. For argument's sake, suppose that the homestead in question had been the separate property of the wife and she had died prior to her husband, contrary to her will or deed or other disposition of such separate property· could he have held and claimed such homestead guaranteed to her as her separate property by the constitution, or could any act of the legislature have legally deprived her of disposing of her separate property guaranteed to her by section 31 of article IV of the constitution?

II.   Evidently section 1 of the act of March 10, 1873 (Comp. Laws 1900, 510), intended to put husband and wife on the same terms as to separate property, as it used exactly the same words in defining the separate property of each of such spouses, and the grant of the constitution to the wife as her separate property, of all property both real and personal of the wife owned by her before marriage and that acquired afterwards by gift, devise or descent, made it necessary to insert the proviso in section 1 of the act to exempt homesteads and other property from forced sale, as amended in 1879 (Comp. Laws 1900, 550), that both husband and wife should join in the declaration of a homestead on separate property, and when either spouse died such homestead should cease to exist, otherwise such homestead act would have been unconstitutional, where declared on the separate property of the wife, as under section 4 of the homestead act as amended in 1879, on the death before her husband her separate property guaranteed to her by the constitution to be disposed of as she saw fit would become the sole property of her surviving husband, for his benefit and that of his legitimate child or children, although the wife who had been previously married may have had many other children and devised much of her separate property from her first husband which became her separate property as to her subsequent spouse or spouses. The second proviso, in section 4 of the homestead act as amended in 1879, is conclusive that no homestead should have been allowed the respondent. This proviso is in the words

following: "*And provided further*, that no exemption to the surviving spouse shall be allowed in cases where the homestead declaration has been filed upon the separate property of either husband or wife as provided in section 1 of this act."

III.   In answer to the brief of A. E. Cheney, Esq., on the application of the surviving wife to have homestead set aside to her and her minor children: His first proposition is "that the court has no jurisdiction to determine any question other than the fact of its occupation as a home." Under the probate act, section 2152, of the act of 1897, Compiled Laws of 1900 provides that "all issues of fact in matters of estate shall be disposed of in the same manner as is by law provided upon the trial of issues .of fact in a common-law action," etc.   Also, see section 255, Comp. Laws 1900, 3041, as to any decisions wherein the amount in controversy exceeds $1,000 may appeal to supreme court to be governed in all respects as an appeal from a final decision and judgment in action at law.   The first section of the probate act (Comp. Laws 1900, 2786), among other provisions, declares that the district court of a county where deceased was a resident shall have exclusive jurisdiction of the settlement of such estates.   Every person over the age of 18 years, of sound mind, may, by last will, dispose of all his or her estate, real and personal, the same being chargeable with the payment of the testator's debts.   Taking the concensus of these many provisions of our latest revision of our probate act in 1897, it is manifest that our legislature intended to give or confer jurisdiction on our probate court to settle all legal questions that arise in the disposition of our administration of the estates of deceased persons, without compelling suitors to resort back and forth to the same judge, the same jury, on the same bench, the same clerk in the same court room, upon the same state of facts calling one a civil action and the other a suit in probate.   The fault in the reasoning on the widow's counsel is that he draws all his conclusions from the decisions of the courts in which "community" property is in question.   In *Roberts* v. *Greer*, 22 Nev. 327, Bigelow, C. J., delivering the opinion of the court, says: "The question in this case is whether upon the death of the wife

the homestead of the parties upon 'community' property remains in the hands of the childless husband as a homestead and as such exempt from levy and sale for his debts." He refers to the first section of the act as amended in 1879 (Gen. Stats., p. 140, sec. 539), and states it briefly. But he does not sniff at the proviso as the attorney for the widow does, but quotes it in full, and he also quotes section 4 (Stats. 1879, p. 141; Gen. Stats. sec. 542), but only quotes the first proviso in section 4, but does not quote the second proviso, "*and provided further*, that no exemption to the surviving spouse shall be allowed in cases where the homestead declaration has been filed upon the separate property of either husband or wife as provided in section 1 of this act," but on page 329, last paragraph, the learned Chief Justice says: "It will be noticed further that the same section one also provides that where the property declared upon as a homestead is the separate property of either spouse, and shall remain such until the death of one of the parties, the homestead right in such property shall thereupon cease." In the case of *Smith* v. *Shrieves*, 13 Nev. 308, in the opinion of the court, Leonard, Justice, says: "There is no allegation that the property described in the complaint was the separate property of the father; and the presumption is that the premises described in the declaration of homestead prior to the filing thereof. as well as those not included therein, were common property"; and consequently respondent's attorney is citing a decision in regard to community property to uphold a contention as to the rule of law as to separate property, whereas where a homestead is declared on community property it lives to comfort the surviving spouse. Whereas, when a homestead is declared on separate property of either spouse, it dies with the last gasp of either spouse and reverts back to "the original owner [or to his or her heirs] to whom it belonged when filed upon as a homestead," according to the proviso in section 550 of Compiled Laws. This proviso in sections 1 and 4 of the homestead act was necessary to conform said law to section 31, article IV, of the constitution, defining what constituted the separate property of the wife, and even the clause in brackets, that the learned attorney for respondent sniffs at as "furtive," continuing the

separate property of the wife ["to her heirs"], was. necessary to conform her rights to the constitution under section 31, article IV, of the constitution; otherwise where she had previously married and had children, and on a second marriage which was childless, her second husband on her death would take one-half or the whole of such separate property of the wife to the exclusion of her children by the first husband.    The citation in respondent's brief in 13 Am. & Eng. Ency. of Law, 2d ed. 533, does not refer to homesteads at all. The case of *Keyes* v. *Cyrus*, 100 Cal. 323, states that the property so set apart as a homestead was community property of the wife, Barbara, and her husband, and he left no minor children.    The case of *Estate of Walley*, 11 Nev. 260, 264, from the statement of Judge Beatty in his decision, was undoubtedly a case of "community" property.    The act of 1897, sec. 100, only provides that when a person shall die leaving a widow or a minor child or children, they shall be entitled to remain in possession of the homestead, etc.    This is only a temporary provision, and in this case there was no homestead under the homestead act of 1897.    If the homestead was declared on separate property of the deceased, it ceased on his death.

IV.    Under section 101, upon the return of inventory or after, the court, on application, or on its own motion, may set apart for the use of the family of deceased the homestead, as designated by the general homestead law now in force. This act provides in plainest terms the English language affords that "if the property declared on as a homestead be the separate property of either spouse, both must join in the execution and acknowledgment of the declaration; and if such property shall retain its character of separate property, until the death of one or the other of such spouses, then and in that event the homestead right shall cease, in and upon said property, and the same shall belong to the party (or his or her heirs) to whom it belonged when filed upon as a homestead."    In other words, the homestead law in force by its proviso destroys any homestead declared on separate property.    Now, had such property belonged to the wife as her separate property, and had she died prior to her husband, under section 31, article IV, of the constitution, the legisla-

ture could not by any law, or attempted law, have divested or deprived her of such property, as any such statute would have clearly been unconstitutional and void, and the fact that her eminent counsel resorted to the court to set aside a homestead for her is a clean-cut admission that such property was the separate property of her deceased husband. This homestead act, in sections 1 and 4, was amended in the statutes of 1879, pages 140 and 141. She and deceased were married in 1889, ten years after said sections 1 and 4 had been amended, and the proviso there is in plain terms enacted that all homesteads on separate property ceased with the death of either spouse and reverted to the original owner or his heirs. The amendment of the act, of an act entitled "An act defining the rights of husband and wife," approved March 10, 1873, as amended March 2, 1881, was amended in 1883, disposing of the community property on death of husband, gave one-half the community property to the wife, and made the other subject to the testamentary disposition of the husband. In the case before the court there was no community property whatsoever. That act of 1881, and which was amended in 1883, dealt entirely with community property, and did not have any reference whatsoever to the separate property of either spouse. Neither of said acts had any reference to any separate property whatsoever, and if they had they would have been annulled by the prior act of 1879, which left no homestead outstanding upon separate property to be acted upon by either of said acts of 1881 and 1883.

V. The court will see by examination of the will that deceased devised and bequeathed the undivided one-half of all his real and personal property to his wife for the use and benefit of herself and their minor children; and that he left in her hands the undivided one-half of the Arcade Hotel property. And in his will he provided, unless she reconveyed the other one-half of said Arcade property, then one-half the value of said Arcade property and its income should be deducted from her half of his other property and added to the share of his other three children, Addie, Frank and Minnie, by his first wife; that said wife still retains the whole of said Arcade property and its income, and in addition has had a homestead set apart to her of the value of $5,000

out of said former homestead, including all of it except so much as it is worth exceeding $5,000, without stating what amount said property is worth in excess of $5,000; that under such state of circumstances said property is removed from administration, and though the will of deceased shows that it was the most earnest wish of his heart and his determined will to divide all his property, real and personal, equally in value to his three children by his first wife and to his last wife and their two minor children.

VI. The wife electing to take under the will clearly disposing of community property is estopped to claim title so as to defeat the will. (*Morrison* v. *Bowman*, 29 Cal. 337–356, cited, affirming such principle in *Noe* v. *Splivals*, 54 Cal. 209; *Aldrich* v. *Willis*, 55 Cal. 87; *In re Stewart*, 74 Cal. 104; *In re Gilmore*, 81 Cal. 243; *In re Redfield*, 116 Cal. 643; *Branson* v. *Watkin*, 96 Ga. 58; *Langley* v. *Mayhew*, 107 Ind. 202, 205; *Hurley Admr.* v. *McIver*, 119 Ind. 55; *Shipman* v. *Keyes Admr.*, 127 Ind. 356; *Jacobs* v. *Miller*, 50 Mich. 127; *Washburn* v. *Van Steenwyk*, 32 Minn. 351, and *Pratt* v. *Douglas*, 38 N. J. Eq. 536, 541, cited in *Mays* v. *Tudor's Heirs*, 74 Tex.) To the point that the wife's election is in such cases necessary, and that she accepted some benefit inconsistent therewith, see 26 Am. Dec. 503–505; 43 Am. Dec. 757, note, and 63 Am. Dec. 128, note. In this case respondent clearly elected to become subject to such will. She became executrix, joined in petition for letters testamentary, qualified as such, sought allowance, obtained allowance of $175 per month, and has received said monthly allowance, and still continues to be executrix, sought and obtained transfer of household furniture, and uses and occupies household, etc. The judgment and decree in this case setting apart homestead is void, is of no force or effect, as it claims all the property described, except as such property exceeds in value $5,000, and practically determines no value and provides no means of ascertaining what value exceeds $5,000, and is uncertain and indefinite in its terms in all respects. It simply mentions it was appraised at $7,500, and prescribes no means of ascertaining what part or portion of such property is of the value of $5,000, and what part or portion is in excess of $5,000.

*Cheney, Massey & Smith*, for Respondents:

There are only two questions presented by this appeal, which it seems necessary to discuss, even if it be admitted that the record shows the property in controversy to have been the separate property of. the decedent, viz: (1) Are the surviving widow and minor children entitled to have a homestead set aside for their benefit out of the separate property of the deceased husband and father? (2) Does the surviving widow waive the right to a homestead by probating and taking out letters testamentary upon the will of her deceased husband?

Before presenting the reasons and authorities why we think each of these questions should be answered in the negative, we desire to call attention to the elaborate brief filed upon behalf of the appellant, and to the fact that it entirely ignores the difference in origin, duration and extent between a homestead exemption right and a homestead set apart by the probate court for the benefit of the family of a deceased. The difference between these two estates is so manifest that there is little excuse for disregarding it. This difference appears in several ways:

(*a*) The authority for each is found in separate statutes, enacted at different times, and with radically different titles and provisions.

(*b*) The homestead exempt right arises from the act of the owner of the property during his lifetime. The family homestead is created by operation of law upon the death of the owner of the property, and is set aside by act of the court upon its own motion, or otherwise.

(*c*) The homestead exemption secures the estate to the family during the lifetime of the declarent against forced sale. The probate homestead vests in the persons named in the statute an absolute title to the property, and the order setting it aside simply withdraws the property from administration.

(*d*) The homestead exemption simply prevents creditors from seizing the property. The probate homestead places the property not only beyond the reach of creditors but of heirs and devisees.

(*e*) Appellant's argument is confined almost exclusively to a consideration of section 1 of "An act to exempt the

homestead and other property from forced sale in certain cases." (Comp. Laws 1900, 550.)

Reliance seems to be placed entirely upon the proviso therein contained to the effect that if a homestead has been declared upon separate property, the "homestead right shall cease in and upon said property" upon the death of the owner of the separate property. What homestead right? Evidently the homestead right created by that act, namely, the right to hold the property free from forced sale. The respondent does controvert the proposition that the homestead right created by the declaration of a homestead upon separate property terminates with the death of the owner of the separate property.

The scope and purpose of that act is both indicated and limited by the title. Any provision therein, if such there be, which attempts to provide for the distribution of the estate of a deceased person, or limit or control the power of a probate court to set aside a homestead on the settlement of the estate of a decased person, is not indicated by the title, and is unconstitutional and void. The provisions of that act must be construed in connection with and in reference to the subject matter made and the purpose of the act as indicated by its title. So applied and construed, the provision that the homestead right shall cease upon the death of the owner of separate estate is given force and effect consistent with the title and consonant with the apparent purpose and intent of the act. The right to probate a homestead rests upon different reasons, different legislation and different procedure. It is justified upon moral grounds as well as reasons of public policy. The claim of the widow and minor children for sustenance and support is superior in ethics and in law to that of either the creditor, heirs or devisees. The widow and the orphan deprived of the companionship and support of the husband and father are recognized as having a stronger claim upon a reasonable amount of his estate, in order to secure them against pecuniary want, than either his creditors, heirs, or devisees, and the state has an interest that its members shall not be destitute, that the children shall be reared and nurtured with reasonable comfort and security, and that neither the widow nor the orphan shall become state charges.

I. The right of the owner of property to dispose of it by will is subject to the power of the state to require a portion of it to be set aside for the support of the surviving members of his family. (*Sulzberger* v. *Sulzberger,* 50 Cal. 385; *In re Davis*, 69 Cal. 458.) In each of these cases the separate property of the decedent had been disposed of by will, yet in both cases it was held that the rights of the devisees under the will was inferior and subject to the power of the probate court to set it aside for the benefit of the widow and minor heirs in one instance, and in the other of the minor heirs alone. "The objection of the respondent that the statute could not constitutionally limit the owner's power of testamentary disposing is equally novel and unfounded. The power to dispose of property by will is neither a natural nor a constitutional right, but depends wholly upon statute, and may be conferred, taken away, or limited, and regulated in whole.or in part, by the legislature; and no exercise of legislative authority in this respect is more usual than that which secures to a widow a certain share in the estate of her husband." (*Brettun* v. *Fox*, 100 Mass. 235–236.)

II. Prior to 1897 the effect of a homestead declaration upon the power of the court in probate to set aside a homestead may have been a matter of some doubt. (*Estate of David Walley*, 11 Nev. 260; *Smith* v. *Shrieves*, 13 Nev. 325; *Roberts* v. *Greer*, 22 Nev. 328.) It will be observed from these decisions and the statutes construed that the questions under consideration relate to the difference between the title of the surviving member of the community, where property had been declared upon under the homestead exemption tax, and the title to the property set aside under the probate act. In *Smith* v. *Shrieves, supra*, the probate court set aside a homestead consisting of two pieces of property, upon only one of which a homestead declaration had been filed, and the question considered in that case is as to the effect of the title arising from the filing of the homestead declaration, and the order of the probate court setting the property apart as a homestead. Considerable doubt arose from the various provisions of the statutes in force when its decisions were rendered. But upon the revision of the probate act in 1897 all

of those doubts were removed. The old probate act required the judge to set aside a homestead as designated by the general homestead law. (Gen. Stats. sec. 790.) The act of 1897 added to this section "whether such homestead has heretofore been selected by said law or not, and the property thus directed to be set apart shall not be subject to administration." (Comp. Laws 1900, 2886.) This addition to the statute makes it immaterial whether a homestead declaration has been filed or not, and removes all possible doubt as to the entire independence of the probate homestead from the homestead preëmption right. The validity of the court's order setting aside this homestead is entirely unaffected by the declaration of the homestead filed against this property, and therefore cannot be influenced by the cessation of any right created by the filing of that declaration. The legislature has expressly said that the property which the judge is directed to set apart shall be set aside whether a homestead declaration has been filed or not. The phrase in both the old and new probate act, "the homestead as designated by the general law," does not mean a homestead which has been declared upon. "The homestead as designated by the general homestead law," which he is commanded to set apart for her use, is not a homestead that has already been secured by that law, but a homestead of the character and value prescribed by that law." (*Estate of David Walley*, 11 Nev. 267.)

III. "The courts, in view of the benevolent purposes of these statutes, have almost universally held that they are to be liberally construed. In other words, the courts do not stick to the letter of the statutes, but give effect to them in accordance with their reasons and spirit." (15 Am. & Eng. Ency. of Law, 2d ed. 533; *Keyes* v. *Cyrus*, 100 Cal. 322.)

IV. Probating a will and accepting letters thereunder does not even tend to show that a widow waives her homestead right or has elected to accept the provisions of the will in lieu of a homestead. (*Sulzberger* v. *Sulzberger*, 50 Cal. 385; *Estate of Balentine*, 45 Cal. 697.) The title to the property set apart for the use of the family vests one-half in the widow and the other in the minor children. Certainly, the widow could not destroy the title of the minors, even if she elected to take an inconsistent provision under the will.

(Comp. Laws 1900, 2889.) Moreover, the judge is charged with the duty of setting aside a homestead. No petition or act of the widow is required. "May" in this statute means "shall," and leaves the court no discretion. (*Estate of Walley*, 11 Nev. 263; *Estate of Balentine*, 45 Cal. 696; *In re Davis*, 69 Cal. 458.)

*Thomas E. Haydon*, and *Torreyson & Summerfield*, for Appellant, in reply:

To appellant's point I: The right of appeal is expressly conferred, in this case, by section 255 of the probate act (Comp. Laws 1900, 3041), to any person interested in, affected by and aggrieved at any decision wherein the amount in controversy exceeds or equals $1,000, exclusive of costs. The amount in this case in controversy is $5,000. The effect of the decree withdraws $5,000 from administration. It decreases the distributive interest of each of the children of the first wife one-third of $2,500. It decreases the interest of appellant in his commissions as executor on $5,000. Section 257 of the probate act (Comp. Laws 1900, 3043) recognizes the right of an executor to appeal even without giving an official bond. Section 281 of the probate act (Comp. Laws 1900, 3067) applies all provisions of law in civil cases to matters of estate when appropriate, or they may be applied as auxiliary to provisions of the probate act when not otherwise specially provided. Section 544 of volume II of Woerner Am. Law of Admin. is directly opposed to respondent's contention. It declares that, where the right to appeal exists, it may be exercised by any person, whether a party to the record or not. Appellant shows in his appeal that he is an heir of one-sixth of the estate, and also as executor has an interest in the commissions on $5,000.

The case *In re Williams*, 122 Cal. 76, is not in point. It was where a distribution had been made and the executor had no interest in the estate. In this case appellant is an heir of one-sixth of estate, and an executor also and interested in the commissions on $5,000 in value, withdrawn by grant of this homestead. In 40 Cal. 465—a case where a distribution was made and some legatees paid more than their shares and others less—it was held that this question was a mat-

ter between legatees, and the executor, having paid all funds of estate in his hands, does not represent any of the legatees against the others, and he cannot litigate the claims of one set of legatees against the others at the expense of the estate.

In 49 Cal. 550–551, an executor had no interest as to how the estate was distributed, and could not maintain an appeal on the ground that one party had too large a portion. In case at bar appellant is an heir, and he opposed the grant of a homestead on the grounds that the property was the separate property of his father before his marriage and so continued to be at the time of his death (see sections 550 and 553, Comp. Laws of 1900, and provisos in such sections, and the Homestead Law of Nevada), and was willed, one-half to respondent and the other one-half to appellant and his two sisters. He made answer, denying any right in respondent to a homestead of his father's separate property, and the district court, without taking any proof that such property was the separate property of his father, granted a homestead to respondent, for the benefit of herself and minor children, to the amount of $5,000. See *Roberts* v. *Greer*, 22 Nev. 327, the first paragraph of which reads: "The question is whether, upon the death of the wife, the homestead of the parties upon 'community property' remains," etc. In the second paragraph of the decision the court quotes the proviso that, if the property declared "upon the separate property of either spouse, both must join in the execution and acknowledgment of the declaration, and, if such property shall retain the character of separate property until the death of one or the other spouses, in that event the homestead right shall cease in and upon such property and the same belong to the party or his or her heirs to whom it belonged when filed upon as a homestead."

The appeal in the case of *G. Marrey, Deceased*, 65 Cal. is not in point on this appeal. There has been no petition for a settlement of the final account in this administration, nor for any distribution. Frank P. Quinn is not prosecuting this appeal at the expense of the estate. He is seeking to maintain the integrity of the estate against the executrix thereof, contrary to the will of the deceased by which she is estopped from depleting such estate. She is not claiming such estate

as a legatee thereof, but as the surviving wife, claiming under
the law of the land, contrary to such law, which grants a sur-
viving wife a homestead only out of the community property
of the husband and wife, and denies any homestead out of
the separate property of her deceased husband, and claims
the same contrary to the terms of the will of her deceased
husband, which granted or willed to her for the use of her-
self and minor children the undivided one-half of all his
property, real and personal; and willed the other undivided
one-half of such property to his other three children, Frank
P. Quinn, Mrs. Addie M. Merchant and Minnie E. Young, the
married daughters of said John J. Quinn and Clara Quinn,
his first wife.

Mrs. A. W. Quinn, second wife of John J. Quinn, clearly
elected to take under the will of deceased. She was nomi-
nated in his will executrix, and qualified as such, though such
will clearly stated that all his property, real and personal,
was his separate property. She elected under said will to
take a family allowance of $175 per month out of his estate,
and took all his household and kitchen furniture under such
will.

A wife electing to take under a will clearly disposing even
of community property is estopped to claim title so as to
defeat the privisions of such will. (See 29 Cal. 337–356,
affirming the principle; *Noe* v. *Splivals*, 54 Cal. 209; *Aldrich*
v. *Willis*, 55 Cal. 87; *In re Stewart*, 74 Cal. 104; *In re Gil-
more*, 81 Cal. 243; *In re Redfield*, 116 Cal. 643; *Branson* v.
*Watkin*, 96 Ga. 58; *Langley* v. *Mayhew*, 107 Ind. 202–205;
*Hurley Admr.* v. *McIver*, 119 Ind. 55; *Jacobs* v. *Miller*, 50
Mich. 127; *Washburn* v. *Van Steenwyk*, 32 Minn. 351; *Pratt*
v. *Douglas*, 38 N. J. Eq. 536–541, cited in *Mays* v. *Tudor's
Heirs*, 74 Tex. 463; cited in 26 Am. Dec. 503, 505, note, 43
Am. Dec. 757, note, and 63 Am. Dec. 128, note.)

In the construction of a will the intention of the testator
controls. (*In re Stewart*, 74 Cal. 101; 26 Am. Dec. 503,
note.)

The intent of the will of deceased is most clear. It
bequeathes an undivided one-half of all his real and personal
property to his wife and minor children and the other one-
half to his older children, undivided; one-third to each of

said children, and enjoins all of them to keep such property undivided and share the income thereof, as it is well invested and brings a good income, and further punctuates his intention by providing if his wife retains the whole of the Arcade property, then, out of the rest of his property and its income, that an equal amount of the value of half the Arcade property and its income shall be deducted from his wife's share and added to the shares of the three older children; and if the Owl property is devised by the grandmother to Frank P. Quinn, then one-half the value of said property and its income shall be deducted from Frank's share and added to the shares of his two sisters. By obtaining the homestead Mrs. Quinn gets two-thirds of the appraised value of such homestead, if retained by her; thus defeating the will in its most pronounced provisions.

And the court will see, by the date of the application of Mrs. Quinn for such homestead and the answer of the executor to such application, that the answer of the executor plainly made answer to such application that the property out of which homestead was sought to be set apart was plainly the separate property of J. J. Quinn; that the issue was plainly tendered in such answer; that such property was the separate property of J. J. Quinn many years prior to his marriage to respondent, and so continued. Yet, after nearly a year's consideration of such petition and such answer, no trial or hearing was had as to whether such property sought to be homesteaded was separate or community property. And under the amendment of the homestead act of 1879 (proviso in section 1, page 141), if the homestead is declared on the separate property of either spouse, both must join in the execution and acknowledgment of the declaration; and if such property shall retain its character until the death of one or the other of such spouses, than and in that event the homestead rights shall cease in and upon said property, and the same belong to the party (or his or her heirs) to whom it belonged when filed upon as a homestead.

The property of the community, of husband or wife, not exceeding $5,000 in value, may be declared upon by either of them, and upon such filing of such declaration a husband and wife shall be deemed to hold the property as joint ten-

ants, but where the property is the separate, then, on death of either spouse, it, the homestead, reverts to the party who owned it when filed on, or if he or she be dead, then it belonged to his or her heirs. Such being the law, on the death of J. J. Quinn, then, the homestead *ceased*, and the property belonged *to his heirs*. He died leaving five children, three by his first wife and two by his second.

How is it possible that the court, or even the law, can divest those five children of the deceased of the property inherited by them from their father and donated to the wife in the face of his express grant of one-half his real and personal property to her, his wife, for her and her two children, and the other half of his real and personal property to his three children by his first wife?

By the Court, TALBOT, J.:

This is an appeal from an order of the Second Judicial District Court, which, after stating that the matter came on regularly to be heard in the presence of the parties and their attorneys, recites: "It appearing to the satisfaction of the court that said premises, at the time of the death of said decedent, were, and for a long time had been, the home and residence of said decedent and his family; that petitioner is the widow of said deceased, and that the family of said deceased consists of said petitioner, and Ray L. Quinn, aged 10 years, and Ruth Quinn, aged 4 years, minor children of said decedent and said petitioner, and now residing with said petitioner; and it further appearing that said property consists of said lot, with a two-story brick building thereon, and that said property is of a value in excess of the amount of five thousand dollars, and has been inventoried and appraised, by the appraisers duly appointed in said estate, as of the value of seven thousand five hundred dollars ($7,500); the court having fully considered the premises and the objections of said executor thereto: Therefore, in consideration of the premises and the law in such case made and provided, it is by the court ordered, adjudged, and decreed that the above-described property and the estate and title therein, save and except so much thereof as exceeds the sum and value of five thousand dollars ($5,000), be, and the

same hereby is, set apart to the said Mrs. Abbie W. Quinn
and said minor children, Ray L. Quinn and Ruth Quinn, as
a homestead."

On behalf of respondent motion is made to dismiss the
appeal on different grounds. The appellant specifies in the
notice of appeal, and contends here, that the district court
had no jurisdiction or power to set apart a homestead from
the real estate, because it was the separate property of the
deceased, owned by him before his marriage, and that on his
death the homestead declared by him and his wife ceased to
exist by express provision of law.

There is no statement on appeal, no bill of exceptions, and
no specification or assignment of error except as suggested
by appellant's brief, by the notice of appeal, and by the cer-
tified copy of the court minute found in the record, stating:
"In the matter of setting aside a homestead in the above-
entitled estate the court at this time rendered its decision.
Ordered, that the application for setting aside homestead be
allowed as prayed for in the petition. Thomas E. Haydon,
Esq., attorney for other heirs, excepted to the decision of the
court. And the court ordered the exception noted."

The probate act, sec. 255 (Comp. Laws, sec. 3041), directs
that any person interested in, affected or aggrieved by, an
order or decree relating to the estates of deceased persons,
wherein the amount in controversy equals or exceeds one
thousand dollars, exclusive of costs, may appeal to this court,
to be governed in all respects as an appeal from a final
decision and judgment in an action at law.

Under the provisions of the practice. act, secs. 332–337
(Comp. Laws, secs. 3427–3432), regulating and providing for
the filing, serving, amending, settling, and certifying of state-
ments, this court, following the rule in other code states, has
often held that, where there is no statement properly authen-
ticated, only errors appearing on the face of the judgment
roll can be considered on the appeal. (*McCausland* v. *Lamb*,
7 Nev. 238; *State* v. *Manhattan S. M. Co.*, 4 Nev. 318; *Thomp-
son* v. *Bank*, 19 Nev. 293, 9 Pac. 883; *Corbett* v. *Job*, 5 Nev.
201; *Hanson* v. *Chiatovich*, 13 Nev. 395; *Allison* v. *Hagan*,
12 Nev. 38; *White* v. *White*, 6 Nev. 20; *Klein* v. *Allenbach*, 6
Nev. 159; *Mining Co.* v. *Dodds*, 6 Nev. 261; *Flannery* v.

*Anderson,* 4 Nev. 437; *Fleeson* v. *Mining Co.,* 3 Nev. 157; *Bryant* v. *Lumbering Co.,* 3 Nev. 313, 93 Am. Dec. 403; *Mitchell* v. *Bromberger,* 2 Nev. 345, 90 Am. Dec. 550; *Nesbitt* v. *Chisholm,* 16 Nev. 39; *Sherman* v. *Shaw,* 9 Nev. 148; *Irwin* v. *Samson,* 10 Nev. 282; *Boynton* v. *Longley,* 19 Nev. 69, 6 Pac. 437, 3 Am. St. Rep. 781: *Earles* v. *Gilham,* 20 Nev. 49, 14 Pac. 588; *Streeter* v. *Johnson,* 23 Nev. 199, 44 Pac. 819; *Peers* v. *Reed,* 23 Nev. 404, 48 Pac. 897; *Becker* v. *Becker,* 24 Nev. 477, 56 Pac. 243.)

Any fact necessary to support the order is presumed to have been proven in the absence of an affirmative showing to the contrary. (*Kelly* v. *Kelly,* 18 Nev. 49, 1 Pac. 194, 51 Am. Rep. 732; *Langworthy* v. *Coleman,* 18 Nev. 440, 5 Pac. 65; *McNabb* v. *Wixom,* 7 Nev. 165; *Libby* v. *Dalton,* 9 Nev. 23; *Lonkey* v. *Wells,* 16 Nev. 271; *McLeod* v. *Lee,* 17 Nev. 103, 28 Pac. 124; *Caples* v. *Railroad Co.,* 6 Nev. 265; *Greeley* v. *Holland,* 14 Nev. 320; *Sherwood* v. *Sissa,* 5 Nev. 349; *Terry* v. *Berry,* 13 Nev. 514; *In re Winkleman,* 9 Nev. 303; Woerner on Admin., 2d ed. sec. 145.)

By analogy, we may consider the petition for the order setting apart a homestead as a complaint, the reply thereto as an answer, and the order as a judgment, and regard them as constituting a judgment roll. In the absence of a statement, only errors appearing on the face of the order are properly before us for determination. It does not indicate that the homestead was directed to be set out of the separate property, nor whether the court heard or refused to hear testimony regarding the character of this real estate, nor, if taken, whether it was conflicting, nor whether pertinent evidence was offered and rejected and exception taken to the refusal of the court to hear and consider it.

In short, it does not appear from the order, and is not shown by any statement on appeal, nor in any other method as required, that the premises set apart are not community property, and as such properly decreed to the widow and children as a homestead, regardless of appellant's main contention that the district court had no power to set aside the separate estate of the deceased. If the court minute were properly in the record, it does not specify any reason for the exception there noted, and it does not indicate that it was

taken on the ground that the premises were the separate property of the deceased. In *Greeley* v. *Holland*, 14 Nev. 323, the court minutes were stricken from the record because not embodied in a statement on appeal.

The objection that the order is void for uncertainty in not setting over any definite portion of the premises can be considered and determined in the absence of a statement, because the matter to which it relates is inherent and is shown by the language of the order. In the statute relating to exemptions (Comp. Laws, sec. 552), provision is made for the appointment of appraisers, on the application and affidavit of a judgment creditor after issuance of execution, to report whether the value of the property is more than the $5,000 allowed to be reserved, and if it is, for a division if practicable, but otherwise for its sale. Our probate act does not provide for any similar procedure when a homestead is ordered out of the estate of a deceased person. We see no impropriety in setting apart the homestead to the value of $5,000, without defining the boundary or extent necessary to reach that sum and without ascertaining whether the premises can be divided. The necessity for this division or termination may never arise, and it is better that the trouble and expense incident be avoided until the time arrives, if ever, when the occupants of the homestead and the owner of the excess cannot agree, and then the tenant in common who is dissatisfied can proceed under the general statute allowing and regulating suits for partition.

We quote from Thompson on Homesteads and Exemptions: "Sec. 630. Where land is sold subject to the homestead right, or under such circumstances that the sale will be valid except as to the homestead, so that the purchaser will get a good title to the residue after the homestead is set off—as where the land is greater in value or in area than the exemption of the statute—what are the legal relations of the owner of the homestead and the purchaser? Several cases answer that they are tenants in common—not of the homestead, but of the whole property.

"Sec. 631. Such being the relation of the parties, either one would, it is thought, in most of the states, either by force of statute or under the general principles of equity,

be entitled to a partition as in case of an ordinary estate in common."

It is said in the opinion in *Barney* v. *Leeds*, 51 N. H. 282: "The extent in quantity of that share could only be determined by assignment under the statute, or by partition. It was not necessarily five-sixths, or any other aliquot part of the premises, although at the time of the levy such was deemed his fair proportion of the whole by the appraisers; but it was so much, whether five-sixths, one-sixth, or any other proportion, as was worth $500. The policy of the law gave the creditor all the rest. When the creditor, at the date and by means of the extent, takes from the debtor all but a certain interest, the share taken and the share left are fixed by law. The estate of the creditor and the estate of the debtor are then determined. That of the debtor is such a quantity of land as is then of the value of $500; that of the creditor is the residue. The precise quantity of the estate of each is fixed by law, and is ascertainable at the option and upon the application of either tenant in common of the entire estate, for a partition of it."

Other similar cases are: *Barney* v. *Leeds*, 54 N. H. 128; *Ferguson* v. *Reed*, 45 Tex. 574; *Badger* v. *Holmes*, 6 Gray, 118; *Sisson* v. *Tate*, 114 Mass. 501; *Silloway* v. *Brown*, 12 Allen, 30; Freeman on Coten. and Par. 2d ed. sec. 60.

Regarding the contention that a homestead cannot be ordered out of separate property, the appeal may be considered dismissed.

As to the other objection, the order of the district court is sufficiently definite, and is affirmed, with costs, in favor of the respondent.

BELKNAP, C. J.: I concur.